THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. JAMES THON, Defendant and Petitioner-Appellee (Sam W. Nolen, Director, State Police, Respondent-Appellant).

Second District    No. 2—00—0482

Opinion filed March 30, 2001.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and A. Benjamin Goldgar, Assistant Attorney General, of counsel), and Sharmila Roy, of Naperville, for appellant.

Michael W. Fleming and Michelle L. Moore, both of Law Office of Michael W. Fleming, of Elmhurst, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

This is an appeal by respondent, Sam W. Nolen, Director of the Illinois State Police, from an order of the circuit court of Du Page County (1) denying his motion to vacate orders expunging the arrest records of petitioner, James Thon, (2) finding that the expungement orders are not void, and (3) granting petitioner's rule to show cause. We hold that petitioner is not eligible to have his records expunged. Accordingly, we reverse the judgment of the trial court and vacate the expungement orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Between 1972 and 1974, petitioner was arrested, charged, and convicted of multiple offenses in Du Page, Lake, and Cook Counties. On August 3, 1983, Governor James R. Thompson pardoned petitioner for these offenses. The certificate of pardon consisted of a preprinted form with spaces to be completed with information regarding the counties in which Thon had been convicted, the nature of the crimes in question, and the sentences for those crimes. The pardon stated that Thon was "acquitted and discharged of and from all further imprisonment and restored to all his rights and citizenship which may have been forfeited by his conviction." The pardon did not explicitly mention expungement.

On or about September 1, 1999, Thon filed various petitions to expunge in the circuit court of Du Page County. The petitions sought to order certain Du Page County law enforcement agencies to expunge from their records the arrests for the convictions for which he had been pardoned.

On October 5, 1999, the circuit court held a hearing on Thon's petitions. Although respondent did not appear at the hearing, an assistant State's Attorney was present. The assistant State's Attorney objected to granting the petitions. In granting petitioner's request for expungement, the circuit court cited two separate grounds. First, the court noted that the court in *People v. Wells*, 294 Ill. App. 3d 405 (1998), outlined the factors to consider in determining whether to grant a petition for expungement. These factors, the court opined, weighed in favor of granting Thon's petitions for expungement. Second, the court observed that the language of the pardon restored to petitioner all of his rights of citizenship. The court reasoned that one of these rights was the right to expungement. The court explained that, "but for the conviction, had [petitioner] simply been arrested without conviction, he would have been able to have these records

expunged." The expungement orders issued the same day and were directed to local law enforcement authorities. The orders also directed the Illinois State Police, Bureau of Identification, to expunge its files of petitioner's arrests.

Upon receiving the expungement orders, the State Police conducted an internal audit of petitioner's arrest records. The audit revealed that the State Police had no record of some of the arrests. As for the remaining arrests, the State Police concluded that it was prohibited from expunging its records pursuant to section 5 of the Criminal Identification Act (Act) (20 ILCS 2630/5 (West 1998)).

On December 21, 1999, petitioner's attorney contacted the State Police regarding the status of its compliance with the expungement orders. James Redlich, chief legal counsel for the State Police, responded in a letter dated January 25, 2000. Redlich, in consultation with the Office of the Governor, opined that petitioner was not eligible for expungement. Redlich noted that petitioner was pardoned in 1983. At that time, Illinois law did not allow expungement of records based upon a pardon. See *People v. Glisson*, 69 Ill. 2d 502 (1978). Redlich acknowledged that, since *Glisson*, section 5(c) of the Act (20 ILCS 2630/5(c) (West 1998)) has been amended to recognize the Governor's authority to "specifically authorize[ ] expungement" after a pardon. However, petitioner's pardon did not specifically authorize expungement. In any case, Redlich opined that, even if Governor Thompson had wanted to authorize expungement, the statutory expungement authority was not available in 1983. Thus, Redlich concluded that the expungement orders were void pursuant to section 5(f) of the Act (20 ILCS 2630/5(f) (West 1998)).

On February 23, 2000, Thon filed a petition for a rule to show cause why respondent should not be held in contempt of court for his failure to comply with the expungement orders. On March 3, 2000, respondent filed a "Combined Response to Defendant's Petition for Rule to Show Cause and Motion to Vacate Expungement Orders." The response reiterated that, because section 5(c) of the Act had only recently been amended to recognize the Governor's authority to authorize expungement after a pardon, the power did not exist prior to enactment of the pertinent provision of the statute. Respondent cited to *Glisson* in support of his theory that the Governor's pardon power did not include the expungement of criminal records. Regarding the language of the pardon itself, respondent argued that the pardon did not "acquit" petitioner of the offenses themselves. Rather, it "acquitted" him of "further imprisonment."

Relying on *People v. Holum*, 166 Ill. App. 3d 658 (1988), petitioner replied that respondent's motion was untimely because it was filed

more than 30 days after the expungement orders issued. Petitioner also argued that the effect of the pardon was to "acquit" him of his crimes. Consequently, petitioner concluded, he was eligible for expungement pursuant to section 5 of the Act.

On March 22, 2000, the parties argued the merits of their respective filings before the circuit court. The court concluded that respondent's motion to vacate was untimely because it was filed more than 30 days after the expungement orders issued. The court also rejected respondent's position that the expungement orders were void. Relying on *Holum*, the court noted that an order is void if the court lacks subject matter or personal jurisdiction or if the order is based on a lack of authority. *Holum*, 166 Ill. App. 3d at 661. However, the *Holum* court noted that the latter situation applies only in "clear-cut" circumstances. *Holum*, 166 Ill. App. 3d at 661. The court reasoned that, at the time the expungement orders issued, it had jurisdiction over the parties and the subject matter. Further, the court opined that this was not a clear-cut case. The court also reiterated that the pardon gave petitioner "all of his rights that he would have enjoyed had he never been convicted." The court opined that this language "could not [have been] more clear." Thus, the court found that petitioner was entitled to expungement of his records. Respondent now appeals.

## II. ANALYSIS

Respondent asks us to determine whether petitioner is eligible to have his records expunged pursuant to section 5 of the Act where petitioner's convictions were subject to a gubernatorial pardon. The trial court determined that it lacked jurisdiction to address the propriety of the expungement orders because respondent's motion to vacate, which was filed more than 30 days after the expungement orders issued, was untimely, and the orders were not void.

Respondent does not dispute that his motion to vacate was filed more than 30 days after the expungement orders issued. However, he claims that the expungement orders may be attacked at any time because they are void. Respondent advances two reasons in support of his position. First, he notes that section 5(f) of the Act (20 ILCS 2630/5(f) (West 1998)) deems "void" any order that violates section 5. Respondent asserts that the expungement orders violated section 5 because expungement is not available to an individual, such as petitioner, who has been previously convicted of a criminal offense. See 20 ILCS 2630/5(a) (West 1998). Respondent also points out that section 5(c) of the Act (20 ILCS 2630/5(c) (West 1998)) allows expungement after a pardon only when the pardon specifically authorizes expungement. Petitioner's pardon did not specifically authorize ex-

pungement. Second, respondent argues that because petitioner was ineligible for expungement under the Act, the circuit court lacked the inherent power to grant expungement to petitioner.

Petitioner counters that the expungement orders are not void under section 5(f) of the Act because section 5(a) permits expungement to those individuals "acquitted" of a criminal offense. Relying on the language of the pardoning document itself, petitioner suggests that the gubernatorial pardon "acquitted" him and "restored [him] to all his rights of citizenship which may have been forfeited by his convictions." For the same reason, petitioner also disputes respondent's contention that the circuit court lacked the inherent power to enter the expungement orders.

■ At the outset we note that article V, section 12, of the Illinois Constitution (Ill. Const. 1970, art. V, § 12) provides in part that "[t]he Governor may grant *** pardons, after conviction, for all offenses on such terms as he thinks proper." Thus, the Governor is constitutionally empowered to grant pardons. In contrast, the power to expunge is controlled by statute. *People v. Bushnell*, 101 Ill. 2d 261, 268 (1984) (noting that in the absence of appropriate legislation, a court is without jurisdiction to expunge a record revealing a record of conviction). Thus, an individual is eligible for expungement only where the legislature has authorized expungement. *Bushnell*, 101 Ill. 2d at 268.

■ We conclude that the expungement orders are void under the Act for two reasons. First, at the time petitioner was pardoned, section 5 of the Act did not authorize expungement for pardoned individuals. *Glisson*, 69 Ill. 2d at 506. Only in 1993, when Public Act 87—1230 became effective, did the legislature authorize expungement after a pardon. See Pub. Act 87—1230, eff. July 1, 1993 (amending 20 ILCS 2630/5 (West 1992)). Even then, expungement was available only when "specifically authorize[d]" by the Governor. 20 ILCS 2630/5(c) (West 1998). Petitioner's pardon fails to "specifically authorize" expungement. Section 5(f) of the Act provides that "[a]ny court order contrary to the provisions of this Section is void." 20 ILCS 2630/5(f) (West 1998). Thus, the circuit court did not have the authority to enter the expungement orders.

Second, for purposes of section 5 of the Act, petitioner is a person previously convicted of a criminal offense. The Act allows expungement only if a person "not having previously been convicted of any criminal offense or municipal ordinance violation *** is acquitted or released without being convicted." 20 ILCS 2630/5(a) (West 1998). Nevertheless, petitioner argues that the pardon undid his conviction. We disagree.

With respect to the effect of a pardon on a conviction, *Glisson*, 69

Ill. 2d 502, is directly on point. Under facts strikingly similar to those here, the *Glisson* court held that a gubernatorial pardon did not entitle the petitioner to expungement. *Glisson*, 69 Ill. 2d at 506-07. The petitioner in *Glisson* was convicted in 1942 of contributing to the delinquency of a minor. Between 1950 and 1958, the petitioner was arrested, but released without being charged, on seven separate occasions. In 1974, the Governor pardoned the petitioner. The petitioner then filed several petitions in the circuit court of Cook County. The petitions sought, *inter alia*, orders directing the expungement of the petitioner's arrest records and the record of his conviction. See Ill. Rev. Stat. 1975, ch. 38, par. 206—5 (now, as amended, 20 ILCS 2630/5 (West 1998)). The trial court granted the petitions, and the appellate court affirmed.

On appeal, the supreme court held that the petitioner did not have a right to the expungement of either his records of arrest or the records of identification related to the 1942 arrest and conviction. *Glisson*, 69 Ill. 2d at 505. The court recognized that the Governor has the constitutional power to grant pardons. Nevertheless, the court noted, the effects of a pardon are not unlimited. *Glisson*, 69 Ill. 2d at 506. The court pointed out that the legislature has explicitly provided in certain areas for rights and benefits to the pardoned individual beyond those afforded by the granting of the pardon. However, the legislature has not acted to authorize the expungement of arrest records to a convicted person after a pardon. *Glisson*, 69 Ill. 2d at 506. Further, the court commented, "it cannot be concluded that the simple issuance of a pardon vests the recipient with an entitlement to this expunction." *Glisson*, 69 Ill. 2d at 506. The *Glisson* court further explained that the Act "authorizes the expunction of records of arrest only for persons 'not having previously been convicted of any criminal offense or municipal ordinance violation.' " *Glisson*, 69 Ill. 2d at 506, quoting Ill. Rev. Stat. 1975, ch. 38, par. 206—5 (now, as amended, 20 ILCS 2630/5 (West 1998)). The court concluded that "[t]he petitioner, because of his conviction, is obviously beyond the statute's reach." *Glisson*, 69 Ill. 2d at 506.

Implicit in the *Glisson* decision is that a gubernatorial pardon does not act to erase an offender's conviction. Indeed, we note that state courts have adopted two theories as to the effect of a pardon on a conviction. One theory holds that a pardon relieves the punishment for the offense and erases the guilt of the offender. See, *e.g.*, *Doe v. State*, 595 So. 2d 212, 213 (Fla. App. 1992); *State v. Bergman*, 558 N.E.2d 1111, 1113-14 (Ind. App. 1990); *Commonwealth v. C.S.*, 517 Pa. 89, 92, 534 A.2d 1053, 1054 (1987). The other theory holds that a pardon does not erase the underlying conviction but merely releases

the offender from further punishment. See, *e.g.*, *Storcella v. State*, 296 N.J. Super. 238, 244, 686 A.2d 789, 792 (App. 1997); *State v. Skinner*, 632 A.2d 82, 84-85 (Del. 1993); *Prichard v. Battle*, 178 Va. 455, 465, 17 S.E.2d 393, 397 (1941); *People ex rel. Prisament v. Brophy*, 287 N.Y. 132, 140, 38 N.E.2d 468, 471 (1941). This latter theory has been adopted by our supreme court as evidenced in *Glisson*. In fact, not long ago, our supreme court reiterated that "a pardon merely releases an inmate from custody and supervision." *Talarico v. Dunlap*, 177 Ill. 2d 185, 190 (1997). The *Talarico* court stressed that "[s]ince the very essence of a pardon is forgiveness or remission of penalty, assessed on the basis of the conviction of the offender, a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof." *Talarico*, 177 Ill. 2d at 190. In other words, "a pardon 'involves forgiveness but not forgetfulness.' " *Talarico*, 177 Ill. 2d at 190, quoting 29 Ill. L. & Prac. *Pardons* § 1, at 109 (1957); see also *People v. Chiappa*, 53 Ill. App. 3d 639, 641 (1977) (noting that a general pardon "is an act of forgiveness, not forgetfulness"). Accordingly, we find that petitioner's pardon did not erase his convictions. Rather, the pardon merely served to release petitioner from further punishment. It follows that petitioner was an individual previously convicted of a criminal offense. Thus, petitioner was ineligible for expungement. Because the trial court entered orders that are contrary to section 5 of the Act, the expungement orders are void. 20 ILCS 2630/5(f) (West 1998).

Even in the absence of section 5(f), we would find the expungement orders void because the trial court lacked the inherent power to grant the orders. An order is void if it was entered by a court that lacked jurisdiction of the parties or of the subject matter or lacked the inherent authority to enter the particular order involved. *People v. Madej*, 193 Ill. 2d 395, 401 (2000). In *Bushnell*, 101 Ill. 2d at 268, our supreme court stated that, "absent appropriate legislation, a court is without jurisdiction to expunge a record revealing a judgment of conviction." As we discuss above, there was no statutory basis upon which the trial court could issue the expungement orders. Parenthetically, we note that our decision in no way reflects on the propriety of the circuit court's decision had petitioner been eligible for expungement under the Act. That issue is not before us. Simply put, the trial court lacked the inherent authority to enter the expungement orders because it never acquired jurisdiction.

■ Petitioner insists that *Glisson* is not applicable to the facts of this case. Petitioner cites three reasons in support of his position. We find all three reasons unpersuasive.

First, petitioner notes that *Glisson* never discusses the precise

language of the pardoning document at issue in that case. We acknowledge that the *Glisson* decision does not discuss the precise language of the pardoning document at issue in that case. However, the record contains ample evidence that the language used to pardon Glisson mirrored the language used to pardon petitioner. The record contains a letter from Mark Warnsing, assistant general counsel for the Office of the Governor. Warnsing conducted an extensive review of the history of pardons in Illinois. Warnsing explained that a copy of the pardon issued to Glisson was not available and that he was unable to obtain a copy of the blank certificate of pardon that would have been used in 1974, the year that Glisson was pardoned. However, Warnsing did obtain a copy of the certificate of pardon used by Governor Otto Kerner between 1961 and 1965. Except for a few cosmetic changes, the form used by Governor Kerner was identical to the form used by Governor Thompson to pardon petitioner. Warnsing also noted that the State currently uses a computer-generated form. . Except for a few cosmetic changes, the current form also contains the same language as the form used by Governor Thompson to pardon petitioner. Warnsing deduced that, if the same language was used in pardons issued in the sixties, eighties, and nineties, it was undoubtedly used in the seventies as well. We agree. Therefore, we conclude that *Glisson* is applicable to petitioner's case.

Petitioner also contends that *Glisson* does not exclude the possibility of a pardoning document providing for the availability of amendment of the public record, *i.e.*, expungement. While we disagree with petitioner's contention, we note that it is irrelevant, since the pardon issued to petitioner by Governor Thompson did not provide for expungement. In addition, we point out that the *Glisson* decision was issued approximately $5^1/2$ years before Governor Thompson pardoned petitioner. Thus, we must conclude that, at the time he pardoned petitioner, Governor Thompson was aware that a pardon did not carry with it the right to expungement.

Third, petitioner insists that, even without specific reference to expungement, the *Glisson* decision does not address the totality of the Governor's constitutional powers to maintain public records (see Ill. Const. 1970, art. V, § 1) and to grant pardons on any terms he thinks proper (see Ill. Const. 1970, art. V, § 12). We disagree with both propositions. First, both constitutional provisions are silent regarding expungement. Moreover, the expungement of criminal records is a creature of legislative enactment. *Bushnell*, 101 Ill. 2d at 268; see also *Skinner*, 632 A.2d at 86 (noting that a review of expungement decisions from other states suggests that entitlement is controlled by express statutory limitations). Thus, expungement is an element nei-

ther of the common law as it pertains to pardons nor of acquittals in criminal proceedings. Furthermore, as between the legislative and the executive branches, we believe that the legislature's exercise of its powers in this area is the more appropriate.

Further, petitioner is not aided by the language of the pardon itself. According to petitioner, Governor Thompson's pardon was a "full, unconditional pardon." Petitioner insists that the language of the document itself indicates that he was "acquitted" of the offenses for which he had been convicted. Petitioner is mistaken.

"Acquittal" is defined as a "release, absolution, or discharge from an obligation, liability, or engagement." Black's Law Dictionary 25 (6th ed. 1990). Petitioner reads the word "acquitted" out of context. The pardon actually provides that petitioner is "acquitted and discharged of and from all further imprisonment." Thus, the pardon did not acquit petitioner of the offenses of which he had been convicted. It merely relieved petitioner of further punishment. *Talarico*, 177 Ill. 2d at 190.

Further, while the pardon "restored to [petitioner] all his rights and citizenship which may have been forfeited by his conviction," we disagree with the circuit court that expungement was one of these rights. In *Glisson*, our supreme court indicated that these rights included the right to hold public office and the right to have one's claims considered by the Court of Claims. *Glisson*, 69 Ill. 2d at 506. However, the *Glisson* court specifically excluded expungement among these rights. *Glisson*, 69 Ill. 2d at 506. See also *People ex. rel. Symonds v. Gualano*, 124 Ill. App. 2d 208, 220-21 (1970) (holding that gubernatorial pardon removed the defendant's ineligibility to hold public office because of prior convictions).

In refusing to find the expungement orders void, the circuit court relied on *Holum*, 166 Ill. App. 3d 658, a decision from this court. In *Holum*, the defendant pleaded guilty to possession of cannabis and was placed on probation. He successfully completed the conditions of the probation, and the court discharged him and dismissed the proceedings against him. Defendant then filed a petition to have his records of arrest expunged, which the circuit court granted. Approximately 2¹/₂ months later, the State filed a motion to reconsider, requesting the order of expungement be amended to allow the State Police to maintain the defendant's arrest records. The State cited section 55a(5) of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1985, ch. 127, par. 55a (now, as amended, 20 ILCS 2605/55a (West 1998))), which provided that the Department of State Police was not precluded from maintaining identification materials of persons fulfilling the terms and conditions of probation. The circuit court granted the State's motion.

The defendant appealed, arguing that the trial court lacked jurisdiction to amend the order of expungement because the State's motion to reconsider was filed more than 30 days after the entry of the expungement order. The State responded that the order of expungement was void because the trial court lacked the inherent power to enter an order expunging all of the defendant's arrest records.

We concluded that the order of expungement was not void because it was not beyond dispute that the order was in violation of the applicable statutory provisions. We explained that the statutory provision relied on by the State in its motion to reconsider became effective after the defendant had completed probation. However, we also noted that prior to the amendment of section 55a(5) it was determined that arrest records associated with a possession of cannabis charge could be expunged pursuant to section 5 of the Act because the successful completion of probation constitutes a release without a conviction within the meaning of section 5 of the Act. See *People v. Kane*, 85 Ill. App. 3d 252 (1980). Accordingly, we concluded that whether the trial court had the authority to enter the original order of expungement depended on whether the amendment to section 55a(5) applied to an individual who had successfully completed probation prior to the amendment but petitioned for expungement after the statute was amended. We reasoned that, since there was no guidance from the legislature on the matter, the issue was left to judicial resolution. However, no court of review had reviewed the issue. Thus, we concluded, the trial court could not have exceeded its authority in entering the original order. *Holum*, 166 Ill. App. 3d at 661-62.

Two factors distinguish the instant case from *Holum*. First, *Holum* did not involve the interplay between expungement and the effect of a pardon on a conviction. More importantly, however, in the instant case there was guidance from our supreme court that a pardon does not obliterate a conviction and that expungement is not available to a pardoned individual. *Glisson*, 69 Ill. 2d at 506; see also *Talarico*, 177 Ill. 2d at 190. Thus, *Holum* is inapplicable to the facts of this case.

Finally, respondent argues that, in granting expungement orders, the trial court improperly infringed upon the Governor's clemency power. See Ill. Const. 1970, art. V, § 12. More specifically, respondent contends that, by effectively expanding the scope of petitioner's pardon, the circuit court disrupted the balance of power between the judiciary and the legislature. However, given our finding that the expungement orders are void, we need not address this argument.

## III. CONCLUSION

For the aforementioned reasons, the judgment of the circuit court

of Du Page County is reversed, and the expungement orders are vacated.

Judgment reversed; orders vacated.

HUTCHINSON, P.J., and McLAREN, J., concur.