791 So.2d 1238 (2001)
Leonard David RANDALL, Petitioner,
v.
FLORIDA DEPARTMENT OF LAW ENFORCEMENT, Respondent.
No. 1D00-2169.
District Court of Appeal of Florida, First District.
August 21, 2001.
*1239 Sheldon Zipkin of Law Offices of Sheldon Zipkin, P.A., North Miami Beach, for Petitioner.
William L. Camper, General Counsel, Florida Parole Commission; John P. Booth, Assistant General Counsel, Florida Department of Law Enforcement, Tallahassee, for Respondent.
WEBSTER, J.
Leonard Randall seeks review by certiorari of the trial court's denial of a petition for a writ of mandamus which sought to compel the Florida Department of Law Enforcement to issue a certificate of eligibility for expunction of his criminal history record pursuant to section 943.0585, Florida Statutes (Supp.1998). In essence, we are asked to decide whether a full pardon signed by the Governor of Florida (and approved by three members of the Cabinet) has the effect of wiping out guilt, so that the conviction is treated as though it had never occurred; or whether the pardon merely removes all legal punishment for the offense, forgiving, but not vitiating, the fact of guilt. We conclude that the latter is the correct view. Accordingly, we hold that the trial court did not depart from the essential requirements of law, and deny the petition.

I.
The pertinent facts are undisputed. Randall was convicted of falsely or fraudulently making a certificate as a notary public, a third-degree felony, in 1985. He was granted a full pardon by Governor Buddy MacKay (which was approved by the entire Cabinet) on December 21, 1998. On April 7, 1999, Randall applied to the Department of Law Enforcement for a certificate of eligibility to have his criminal history record expunged. On the application, he noted the conviction and the subsequent pardon. The Department of Law Enforcement denied the application on August 10, 1999, on the ground that "[t]he criminal history record reflect[ed] an adjudication of guilty of the charge[ ] from the arrest or alleged criminal activity to which the application pertain[ed]." Randall then filed in the trial court a petition seeking a writ of mandamus to compel the Department of Law Enforcement to issue the certificate of eligibility.
In his mandamus petition, Randall recited the foregoing facts. He then cited the decision in Doe v. State, 595 So.2d 212, 213 (Fla. 5th DCA 1992), for the proposition that "[w]hen the pardon is full, it remits the punishment and blots out of existence the guilt, so that in the eyes of the law the offender is as innocent as if he never committed the offense." Finally, he asserted that "[n]o valid statute or law permits the [Department of Law Enforcement's] withholding or refusal to issue a Certificate of Eligibility." The trial court issued an order to show cause, to which the Department responded. In its response, the Department asserted that section 943.0585, *1240 Florida Statutes, precluded it from issuing a certificate of eligibility for expunction of a criminal history record if the applicant had been adjudicated guilty of any act stemming from the arrest or alleged criminal activity to which the petition related. It asserted, further, that Doe v. State, upon which Randall relied, was inconsistent with other Florida cases, as well as federal decisions and decisions from other states. Finally, the Department argued that, even if correctly decided, Doe was inapplicable because of changes in the controlling statutes since the decision. The trial court eventually held that ineligibility for a certificate because of an adjudication of guilt of an act stemming from the arrest or criminal activity to which the petition related was not removed by a full pardon absent a specific provision in the pardon to that effect. Randall seeks review of that order by a petition for a writ of certiorari. We have jurisdiction. See Sheley v. Florida Parole Comm'n, 703 So.2d 1202 (Fla. 1st DCA 1997) (criminal division en banc), approved, 720 So.2d 216 (Fla.1998).

II.
The scope of our review on such a petition for certiorari is limited to determining whether the trial court (1) afforded due process and (2) observed the essential requirements of law. Sheley, 703 So.2d at 1206. Randall does not claim that the trial court failed to afford him due process of law. Accordingly, our review is limited to determining whether the trial court's ruling constitutes a departure from the essential requirements of law, that is, whether it constitutes "a violation of a clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So.2d 93, 96 (Fla.1983).
Mandamus is an extraordinary remedy. State ex rel. Haft v. Adams, 238 So.2d 843, 844 (Fla.1970). One seeking a writ of mandamus must establish the existence of "a clear legal right to the performance of a clear legal duty by a public officer and that ... no other legal remedies [are] available." Hatten v. State, 561 So.2d 562, 563 (Fla.1990). "Mandamus may not be used to establish the existence of ... a right, but only to enforce a right already clearly and certainly established in the law." Florida League of Cities v. Smith, 607 So.2d 397, 401 (Fla.1992). Thus, to be entitled to the writ of mandamus he sought in the trial court, Randall was obliged to demonstrate that he had a clear legal right to the certificate of eligibility for expunction; that the Department had a clear legal duty to issue the certificate; and that no other legal remedy was available to him.

III.
Section 943.0585, Florida Statutes (Supp.1998), authorizes "[a]ny court of competent jurisdiction [to] order a criminal justice agency to expunge the criminal history record of a minor or an adult who complies with the requirements of th[at] section." However, a court may not order a criminal history record expunged until the person seeking such action has applied for and received a "certificate of eligibility for expunction" from the Department. The requirements for a certificate of eligibility are set out in section 943.0585(2). Upon receipt of an application which satisfies the statutory requirements, the Department has a legal duty to issue a certificate. Id. Among other things, a person seeking a certificate of eligibility must establish that he or she "[h]as not been adjudicated guilty of, or adjudicated delinquent for committing, any of the acts stemming from the arrest or alleged criminal activity to which the petition to expunge pertains." § 943.0585(2)(e), Fla. Stat. (Supp.1998). Relying principally on *1241 the decision in Doe v. State, 595 So.2d 212 (Fla. 5th DCA 1992), Randall argues that the effect of his full pardon was to erase his conviction so that, as a matter of law, he was entitled to be treated as though the conviction had never occurred. Therefore, he contends that he had a clear legal right to the certificate of eligibility, and the Department had a clear legal duty to issue it. The Department responds that, while a full pardon removes all legal punishment for an offense, it merely forgives, rather than vitiates, the fact of guilt. Therefore, it contends that Randall failed to establish either that he had a clear legal right to a certificate of eligibility or that the Department had a clear legal duty to issue one.
The Florida Constitution provides that, "[e]xcept in cases of treason and in cases where impeachment results in conviction, the governor may, ... with the approval of three members of the cabinet, grant full or conditional pardons." Art. IV, § 8(a), Fla. Const. This is a discretionary power vested exclusively in the executive, with which neither the legislature nor the judiciary may interfere. Sullivan v. Askew, 348 So.2d 312, 316 (Fla. 1977). It is undisputed that Randall received a "full pardon," signed by Governor MacKay, and approved by the entire Cabinet. To resolve this dispute, we must determine the legal effect of such a "full pardon."

A.
As previously noted, Randall relies principally on Doe v. State, 595 So.2d 212 (Fla. 5th DCA 1992), to support his argument that he has a clear legal right to issuance of the certificate of eligibility, and the Department has a clear legal duty to issue it. In Doe, the appellant, who had been convicted of being an accessory to robbery, sought expunction of his criminal history record pursuant to section 943.058, Florida Statutes (1989), following receipt of a full pardon. Id. at 213. At the time, there was no statutory requirement that a person petitioning a court for expunction of a criminal history record first obtain a certificate of eligibility from the Department. See ch. 92-73, § 3, Laws of Fla. (creating section 943.0585, Florida Statutes, subsection 2 of which required a person seeking to expunge his or her criminal history record to apply to the Department for a certificate of eligibility for expunction before petitioning the court); ch. 95-427, § 3, Laws of Fla. (adding to section 943.0585 the language "The court shall not order a criminal justice agency to expunge a criminal history record until the person seeking to expunge a criminal history record has applied for and received a certificate of eligibility for expunction pursuant to subsection (2)."). The trial court denied the petition, concluding that, as a matter of law, Doe was not entitled to expunction because section 943.058(2)(b), Florida Statutes (1989), required that, to be eligible, "[t]he person who is the subject of the record" must not have "been adjudicated guilty of any of the charges stemming from the arrest or alleged criminal activity to which the records expunction petition pertains." According to the trial court, "the fact that appellant ha[d] received a full and unconditional pardon ... d[id] not remove the adjudication of guilt." 595 So.2d at 213.
Reversing the trial court, the Fifth District rejected the state's argument "that a full and unconditional pardon does not remove the adjudication itself but only removes the disabilities which flow from such an adjudication." Id. It held that "[b]ecause a full and unconditional pardon legally blots out the finding of guilt, the pardon removes all the attendant legal consequences which flow from an adjudication of guilt. The pardonee is no longer *1242 legally considered `convicted' or `adjudicated guilty' of that crime." Id. In doing so, it relied on four casesAdvisory Opinion to the Governor, 14 Fla. 318 (1872); Singleton v. State, 38 Fla. 297, 21 So. 21 (1896); Marsh v. Garwood, 65 So.2d 15 (Fla.1953); and Fields v. State, 85 So.2d 609 (Fla.1956).
The Department argues that Doe is inapplicable because of changes in the controlling statutes since it was decided. It is true that the pertinent statutes have been amended since Doe. However, the fact remains that the language pertinent in Doe is substantively identical to that which is pertinent for our purposes. The Doe court was concerned with section 943.058(2)(b), Florida Statutes (1989), which precluded a court from expunging a criminal history record if the person who was the subject of the record had "been adjudicated guilty of any of the charges stemming from the arrest or alleged criminal activity to which the records expunction petition pertains." We are concerned with section 943.0585(2)(e), Florida Statutes (Supp. 1998), which precludes the Department from issuing a certificate of eligibility for expunction if the person who is the subject of the criminal history record has "been adjudicated guilty of, or adjudicated delinquent for committing, any of the acts stemming from the arrest or alleged criminal activity to which the petition to expunge pertains." Just as in Doe, we must determine the effect of a "full pardon" by the Governor of Florida on an adjudication of guilt. Accordingly, we are unable to distinguish Doe in any meaningful way. However, we conclude that the Doe court failed to consider the impact of certain relevant Florida Supreme Court decisions and, because of that, reached an incorrect result.

B.
In Advisory Opinion to the Governor, the Governor had asked "the opinion of the Judges of the Supreme Court upon the question whether the pardon of an individual, after conviction, restores the rights forfeited by the conviction." 14 Fla. at 318. The court responded:
"[A] pardon reaches both the punishment prescribed for the offence, and the guilt of the offender. When the pardon is full, it remits the punishment and blots out of existence the guilt, so that in the eyes of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities and restores him to all his civil rights. It makes him as it were a new man, and gives him a new credit and capacity. There is only this limitation to its operation: it does not restore offices forfeited or property or interests vested in others in consequence of the conviction and judgment." (Ex parte Garland, [71 U.S. (]4 Wallace[)], [at] 380).
This is the language of the Supreme Court of the United States when determining the effect of a full pardon by the President of the United States. There is nothing in the Constitution or laws of this State to vary its effect here.
Id. at 319.
"[A]dvisory opinions to the Governor are not binding judicial precedents." Lee v. Dowda, 155 Fla. 68, 19 So.2d 570, 572 (1944). They constitute merely persuasive authority. State ex rel. Williams v. Lee, 121 Fla. 815, 164 So. 536, 538 (1935). Logically, the degree of persuasiveness of a particular advisory opinion will depend upon the reasonableness of the conclusions reached and the strength of the legal authorities relied on. The fact *1243 remains, however, that Advisory Opinion has subsequently been cited with apparent approval by the supreme court. Thus, in Singleton v. State, 38 Fla. 297, 21 So. 21, 22 (1896), in dicta, the court cited Advisory Opinion with apparent approval, saying that it was "settled law" that a pardon both "blots out the crime committed" and "removes all disabilities resulting from the conviction." Subsequently, again in dicta, in Marsh v. Garwood, 65 So.2d 15, 19 (Fla.1953), the court cited Advisory Opinion for the proposition that "a pardon ... reaches both the punishment prescribed and the guilt of the offender." Singleton and Marsh have, in turn, been cited in Fields v. State, 85 So.2d 609, 610 (Fla. 1956), for "the rule of penal law ... that a full and unconditional pardon `removes all that is left of consequences of conviction'"; and the language in Singleton has been cited (again in dicta) with apparent approval in In re Advisory Opinion of Governor Civil Rights, 306 So.2d 520, 522-23 (Fla.1975). There is, however, another line of supreme court decisions that bears on our inquiry. It addresses the effect of a pardon in the context of occupational qualifications and licensing.

C.
In State v. Snyder, 136 Fla. 875, 187 So. 381, 381 (1939), the court was faced with the following question:
When a disbarment proceeding is instituted predicated on the fact of a charge and conviction of embezzlement and before final judgment, the defendant is granted a full and complete pardon restoring him to all rights of citizenship, does such pardon and restoration also restore him to his status as attorney at law and thereby warrant an abandonment of the disbarment proceedings then pending against him?
Answering the question in the negative, the court said that "[t]he pardon does not blot out the fact of having committed the crime for which disbarment is imposed." Id. at 382. It "does not reach and purge [one] of th[e] stigma" "attached to the fact of having been charged with and convicted of embezzlement." Id. "It merely restores civil rights that were forfeited for having committed and been convicted of the crime." Id. See also State v. Evans, 94 So.2d 730, 735 (Fla.1957) (citing Snyder with approval for the proposition that "a pardon does not sua sponte operate to eliminate the taint of the conviction so far as disbarment is concerned.... [I]n a disbarment proceeding based on conviction of a crime, the proof of conviction and an adjudication of guilt are sufficient to establish a prima facie case for disciplinary action.").
In Page v. Watson, 140 Fla. 536, 192 So. 205 (1938), the court was asked to determine whether "a full and complete pardon" was a defense to a proceeding instituted by the board of medical examiners seeking to revoke or annul a license to practice medicine on the ground that the licensee had been convicted of a felony. The court again answered the question in the negative. In doing so, it cited with approval the following quotation from Corpus Juris:
"When a full and absolute pardon is granted, it exempts the individual upon which it is bestowed from the punishment which the law inflicts for the crime which he has committed. The crime is forgiven and remitted, and the individual is relieved from all of its legal consequences. The effect of a full pardon is to make the offender a new man. While a pardon has generally been regarded as blotting out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense, it does not so operate for all purposes and as the very essence of a *1244 pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof; it does not wash out the moral stain; as has been tersely said; it involves forgiveness and not forgetfulness."
Id. at 208. According to the court, the effect of the pardon was merely to "restore[ ] one to the customary civil rights which ordinarily belong to a citizen of the State, which are generally conceded or recognized to be the right to hold office, to vote, to serve on a jury, to be a witness." Id. at 207-08. The court acknowledged Advisory Opinion and Singleton, but concluded they were inapposite because they stood only for the proposition that a pardon remits all punishment attributable to the offense pardoned. Id. at 210.
Finally, in what appears to be its most recent pronouncement on the topic, in Sandlin v. Criminal Justice Standards & Training Commission, 531 So.2d 1344 (Fla.1988), the court held that the Criminal Justice Standards and Training Commission could consider an applicant's pardoned felony convictions in determining whether the applicant qualified for certification as a law enforcement officer. In doing so, the court construed Page v. Watson as holding that "a pardon removes punishment, but not moral guilt." Id. at 1346.
We read Snyder, Page and Sandlin as intended by the court to limit the effect of the extremely broad language regarding the effect of a pardon found in Advisory Opinion, Singleton, and Marsh. More particularly, we read the former cases as intended to recede from any suggestion in the latter cases that a pardon has the effect of wiping out guilt, so that the conviction is treated as though it had never occurred. We read the latter cases as standing for the proposition that, while a full pardon restores one's civil rights and remits all punishment associated with the conviction, "`it does not obliterate the fact of the commission of the crime and the conviction thereof;'" nor does it "wash out the moral stain." Page, 192 So. at 208. In other words, "`it involves forgiveness and not forgetfulness.'" Id.

IV.
Federal decisions appear to reach a similar conclusion regarding the effect of a full presidential pardon. (Such decisions would appear particularly persuasive considering that our supreme court relied in Advisory Opinion on what it understood to be the United States Supreme Court's interpretation of the effect of a pardon under federal law, as expressed in Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866).) Thus, in United States v. Noonan, 906 F.2d 952 (3d Cir.1990), the court reversed the trial court's order granting a motion to expunge records relating to Noonan's conviction, as to which he had subsequently received a full presidential pardon. The court noted that "[t]he centerpiece of Noonan's argument" for the proposition that he was entitled to have his criminal conviction record expunged was "that a pardon `blots out of existence the guilt'" according to Ex parte Garland. Id. at 955. Rejecting that argument, the court said:
The unspoken predicate of Noonan's argument is that a Presidential pardon has the force of wiping out guilt. He relies on dictum set forth in Ex Parte Garland, 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366 (1866): "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he *1245 had never committed the offense." 71 U.S. at 380.
By 1915, however, the Court made clear that it was not accepting the Garland dictum that a pardon "blots out of existence the guilt." In Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 (1915), the Court reaffirmed its reasoning in United States v. Wilson, 32 U.S. (7 Pet.) 150, 8 L.Ed. 640 (1833), and concluded that there is a "confession of guilt implied in the acceptance of a pardon." Burdick, 236 U.S. at 91, 35 S.Ct. at 269. The Court explained that "[a pardon] carries an imputation of guilt; acceptance a confession of it." Id. at 94, 35 S.Ct. at 270.
Id. at 958. Following a lengthy analysis of the historical effect of a pardon, the Noonan court concluded:
[O]n the basis of long-held traditional views on the effect of a pardon, covering diverse periods and sources from Bracton and Blackstone to Professor Williston, from seventeenth century English cases to those in contemporary courts of Great Britain and the British Commonwealth, from 1915 teachings of the Supreme Court, and the 1975 analysis of the Court of Appeals of the Seventh Circuit, we conclude that the Presidential pardon of 1977 does not eliminate Noonan's 1968 conviction and does not "create any factual fiction" that Noonan's conviction had not occurred to justify expunction of his criminal court record. Poena tolli potest, culpa perennis erit (The punishment can be removed, but the crime remains). BLACK'S LAW DICTIONARY 1040 (5th ed.1979).
Id. at 960. To similar effect are Bjerkan v. United States, 529 F.2d 125 (7th Cir. 1975), in which the court held that a full presidential pardon restores both state and federal civil rights (id. at 129), but "does not `blot out guilt' nor does it restore the offender to a state of innocence in the eye of the law as was suggested in Ex Parte Garland" (id. at 128 n. 2); and In re North, 62 F.3d 1434 (D.C.Cir.1994), in which the court rejected the "expansive dictum" in Ex parte Garland (id. at 1437) and held that, "[b]ecause a pardon does not blot out guilt or expunge a judgment of conviction," it likewise "does not blot out probable cause of guilt or expunge an indictment." Id. at 1437. Scholarly literature also appears to support the conclusion that while a full pardon has the effect of removing all legal punishment for the offense, it does not wipe out guilt or the fact of conviction; it forgives, but does not forget, the fact of guilt. See Samuel Williston, Does a Pardon Blot Out Guilt?, 28 Harv. L.Rev. 647 (1915) (examining the historical effect of a pardon); Ashley M. Steiner, Remission of Guilt or Removal of Punishment? The Effects of a Presidential Pardon, 46 Emory L.J. 959 (1997).

V.
We conclude from Snyder, Page and Sandlin that our supreme court has adopted the position that, while a full pardon has the effect of removing all legal punishment for the offense and restoring one's civil rights, it does not wipe out either guilt or the fact of conviction. The Doe court failed to consider the impact of these decisions on its analysis. As a result, we believe that the Doe court misinterpreted the state of Florida law on the issue, and arrived at an erroneous conclusion. Accordingly, we decline to follow Doe, with which we note direct conflict. Instead, because the retention of Randall's criminal history record does not constitute punishment of any sort but, rather, merely accurately reflects the historical fact of his arrest and subsequent conviction, we hold that the trial court did not depart from the essential requirements of law when it denied Randall's petition seeking a writ of *1246 mandamus. The petition for a writ of certiorari is denied.
MINER and KAHN, JJ., CONCUR.