Ronald Lee BLAKE, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0605–CR–369.

Court of Appeals of Indiana.

Jan. 24, 2007.

Ronald Lee Blake, Jr., Wethersfield, CT, Appellant, pro se.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Ronald Lee Blake, Jr. (Blake), appeals the trial court's denial of his request to expunge the criminal records related to his 1992 robbery conviction.

We affirm in part, reverse in part, and remand with instructions.

### ISSUES

Blake raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court properly denied Blake's Petition to expunge the records related to his 1992 conviction for robbery following a gubernatorial pardon issued by Governor Mitchell E. Daniels, Jr. in 2005.

### FACTS AND PROCEDURAL HISTORY

In 1991, Blake was charged with two counts of robbery and three counts of criminal confinement. On September 8, 1992, Blake pled guilty to one count of robbery and consequently served a six-year term of imprisonment at the Indiana Department of Correction.

On December 16, 2005, Governor Daniels issued Executive Order 05–39 granting Blake's petition for a pardon from his conviction. Thereafter, while pursuing a license to practice law in Connecticut, Blake filed a "Petition to Compel the Court to Expunge the Records of Arrest, Conviction, and Incarceration Following Gubernatorial Pardon." (Appellant's App. p. 5). Specifically, Blake requested that "[a]ll records pertaining to [his] arrest, trial, and conviction ... be expunged." (Appellant's App. p. 6). On April 5, 2006, the trial court issued an Order denying Blake's request for expunction of his criminal records.

Blake now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Blake argues that in light of the Governor's pardon, the trial court erred in denying his Petition to expunge the criminal records connected to his 1992 robbery conviction. Primarily, the records of concern are: 1) the record of conviction, and 2) the arrest records. While the State concedes that the trial court improperly denied Blake's Petition to expunge his record of conviction, the State contends that the trial court properly denied Blake's request to expunge the records related to his arrest. In particular, the State asserts that Ind. Code § 35–38–5–1 is the only avenue for expunging an arrest record and that Blake has not met the statutory requirements. On the other hand, Blake asserts that the trial court was not restricted to reliance upon I.C. § 35–38–5–1 when deciding whether to expunge his arrest records.

The authority of the Governor to issue pardons rests in Indiana Constitution Article V, Section 17, which states, in pertinent part: "The Governor may grant reprieves, commutations, and pardons, after conviction, for all offenses except treason and cases of impeachment, subject to such regulations as may be provided by law...." In addition, we have previously held that in carrying out the executive mandate of a pardon, a trial court "[has] no choice but to 'clear [a defendant's] name' by expunging the record of [his] conviction." *State v. Bergman,* 558 N.E.2d 1111, 1113 (Ind.Ct. App.1990).

I.C. § 35–38–5–1 provides in pertinent part:

(a) Whenever:

(1) an individual is arrested but no criminal charges are filed against the individual; or

(2) all criminal charges filed against an individual are dropped because:

(A) of a mistaken identity;

(B) no offense was in fact committed; or

(C) there was an absence of probable cause

the individual may petition the court for expunction of the records related to the arrest.

Like Blake in the case before us, the defendant in *Bergman* sought to expunge his record of conviction following a pardon by Governor Orr; however, he did not request to expunge his arrest record. *Id.* at 1112. In *Bergman,* we examined I.C. § 35–38–5–1 and found that it makes no reference to the expunction of a record of conviction based on a gubernatorial pardon after conviction. Rather, we held that it applies only to the expunction of records prior to conviction, or in other words, when there is no conviction. *Id.* at 1113; *see also* I.C. § 35–38–5–1. Yet, despite our determination that the statute did not apply in Bergman's case, we decided that in carrying out the executive mandate of a pardon with no apparent conditions, the trial court was required to expunge the record of conviction. *Bergman,* 558 N.E.2d at 1113.

Nevertheless, we did not state precisely in *Bergman* that a pardon requires an expunction of *all* records pertaining to his conviction. *Id.* at 1114. However, excluding the issue of expunging arrest records, we agree with Blake and the State that the trial court erred when it failed to grant Blake's request to expunge his record of conviction.

Blake now asks this court to determine whether I.C. § 35–38–5–1 is the only

means for expunging a record of arrest. The interpretation of a statute is a question of law reserved for the courts. *In re 2002 Lake County Tax Sale, et al. v. Frazee,* 818 N.E.2d 505, 507 (Ind.Ct.App.2004). Appellate courts review questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.*

Two years after our decision in *Bergman,* we addressed the interpretation and application of I.C. § 35–38–5–1 in *Kleiman v. State,* 590 N.E.2d 660, 662 (Ind.Ct.App. 1992), *reh'g denied,* where we held that although the statute is the not the solitary procedure for expunging a record of conviction, it is the only means by which *arrest* records may be expunged. *See also State v. Reynolds,* 774 N.E.2d 902, 904 (Ind.Ct.App.2002). However, Kleiman, unlike Blake in the present case, was a former defendant seeking to expunge his arrest record after he was *acquitted* of a misdemeanor, rather than after he was convicted and pardoned. *Kleiman,* 590 N.E.2d at 660. Even though we highlighted this distinguishing fact in Kleiman's situation, we inferred that if Bergman—as Blake has here—had sought to expunge his arrest record, and not just his record of conviction, he would have had to meet the requirements of I.C. § 35–38–5–1 as well. *Id.* at 662.

In our evaluation, *Kleiman's* seemingly blanket application of I.C. § 35–38–5–1 to the expunction of arrest records is in direct conflict with the language of the statute. In plain language, we find that the statute specifically applies to expunging arrest records when either no criminal charges are ever filed against the arrestee or the charges are dropped. *See* I.C. § 35–38–5–1. Accordingly, the statute cannot apply in Blake's case, nor could it

have if Bergman had similarly asked for an expunction of arrest records—as both were convicted and pardoned. In our reading, the statute simply does not address the expunction of arrest records when a defendant is convicted and subsequently pardoned.

Furthermore, we find that no Indiana statute sets out the requirements or procedure for expunging arrest records, or any records for that matter, following a gubernatorial pardon.[1] In fact, the mandatory expunction of a record of conviction following a pardon is based solely on *Bergman*, and not on any statute. Consequently, without a legislative guide or Indiana case law as to the process for expunging arrest records after a pardon, we turn our analysis to how our sister states have handled the issue. As the issue presented here is a question of law, our review remains *de novo*. *See In re Estate of Powers*, 849 N.E.2d 1212, 1216 (Ind.Ct.App.2006).

Initially, we note that long ago, the United States Supreme Court stated:

> A pardon reaches both the punishment prescribed for the offen[s]e and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offen[s]e. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

*Bergman*, 558 N.E.2d at 1113 (quoting *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366 (1866)).

However, since the time of *Ex parte Garland*, State courts seem to have adopted two theories in determining the effect of a pardon: one which relieves the punishment for the offense and erases the guilt of the former convict, and one which does not erase the underlying conviction, but instead releases the former convict from further punishment. *People v. Thon*, 319 Ill.App.3d 855, 254 Ill.Dec. 177, 746 N.E.2d 1225, 1230 (2001), *appeal denied; see also Bergman*, 558 N.E.2d at 1113. Adopting the second theory and relying heavily on a 1978 Illinois supreme court case, *People v. Glisson*, 69 Ill.2d 502, 14 Ill.Dec. 473, 372 N.E.2d 669 (1978), the Appellate Court of Illinois in *Thon* concluded that the Governor is constitutionally empowered to grant pardons, but that the power to expunge is controlled strictly by the legislature. *Thon*, 254 Ill.Dec. 177, 746 N.E.2d at 1230.

*Glisson* held, in pertinent part:

> The granting of a pardon does not expunge the record. It merely provides official forgiveness ... The legislature has not acted to authorize the expunction of arrest records or the return of identification records to a convicted person upon the granting of a pardon, and it cannot be concluded that the simple issuance of a pardon vests the recipient with an entitlement to this expunction and return.

*Glisson*, 14 Ill.Dec. 473, 372 N.E.2d at 670. Referencing the *Glisson* court's conclusion that a pardoned individual has no right to the expunction of arrest or identification

---

1. For an example of a statute that provides for expunction of all records and files pertaining to an arrest if a defendant is convicted and subsequently pardoned, *see* Article 55.01 of the Texas Code of Criminal Procedure, stating in part that an arrestee "is entitled to have all records and files relating to the arrest expunged if ... (B) convicted and subsequently pardoned ..."

records, the *Thon* court reiterated that the effects of a pardon are not unlimited, and elaborated by noting, "a pardon 'involves forgiveness but not forgetfulness.'" *Thon*, 254 Ill.Dec. 177, 746 N.E.2d at 1230 (quoting *Talarico v. Dunlap*, 177 Ill.2d 185, 190, 226 Ill.Dec. 222, 685 N.E.2d 325 (1997)).

Then, in 2004, the Supreme Court of Florida, in *R.J.L. v. State*, 887 So.2d 1268 (Fla.2004), addressed this issue in depth with the goal of resolving a conflict in its state's case law. First, the *R.J.L.* court laid out the holding in *Doe v. State*, 595 So.2d 212 (Fla. 5th DCA 1992), where its Fifth District Court of Appeal concluded that a pardon enables the pardonee to have his criminal history records expunged. *R.J.L.*, 887 So.2d at 1271. Specifically, the *Doe* court declared, "[a] full and unconditional pardon removes all that is left of the consequences of conviction." *Id.* at 1272. Further, the *Doe* court found that if a pardoned individual is not entitled to expunction, the Governor's pardon power would be unconstitutionally limited. *Id.*

However, the *R.J.L.* court next explained that nearly ten years after *Doe*, Florida's First District Court of Appeal decided that *Doe* "failed to consider the impact of certain relevant Florida Supreme Court decisions and, because of that, reached an incorrect result." *R.J.L.*, 887 So.2d at 1272–73. (quoting *Randall v. Florida Dep't of Law Enforcement*, 791 So.2d 1238 (Fla. 1st DCA 2001)). The *Randall* court instead concluded that the language used in early cases such as *Ex parte Garland*, referring to pardons as unconditional, was merely persuasive authority and generally dicta. Even though there was also precedent available to the *Randall* court to reaffirm that a pardon removes all the consequences of a conviction, the court leaned the other direction by focusing on a line of cases dealing with "the effect of a pardon in the context of occupational qualifications and licensing." *R.J.L.*, 887 So.2d at 1273 (quoting *Randall*, 791 So.2d at 1243). In doing so, it held that a pardon does not remove either guilt or the fact of conviction and concluded that Randall was not entitled to a certificate of eligibility to have his records expunged. *R.J.L.*, 887 So.2d at 1273.

Additionally, in discussing previous rejection of the *Garland* dictum, the *R.J.L.* court cited to *Bjerkan v. United States*, 529 F.2d 125 (7th Cir.1975), where the 7th Circuit stated:

A pardon does not "blot out guilt" nor does it restore the offender to a state of innocence in the eye of the law as was suggested in *Ex parte Garland*. We accept the view of the effect of a pardon propounded by Professor Williston in *Does A Pardon Blot Out Guilt?* 28 Harv. L.Rev. 647, 653 (1915):

The true line of distinction seems to be this: The pardon removes all legal punishment for the offense. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.

Thus, the fact of conviction after a pardon cannot be taken into account in subsequent proceedings. However, the fact of the commission of the crime may be considered. Therefore, although the effects of the commission of the offense linger after a pardon, the effects of the conviction are all but wiped out.

*R.J.L.,* 887 So.2d at 1274 (quoting 28 Harv. L.Rev. at 128 n. 2).

Further, we note that Florida is not the only state to more recently grapple with this issue. The Supreme Court of Delaware, in *State v. Skinner,* 632 A.2d 82, 84 (Del.1993), also discussed the rejection of the principles contained in the dictum of *Ex Parte Garland* in U.S. Supreme Court decisions beginning as early as 1833. Specifically, the *Skinner* court pointed out that in *Burdick v. United States,* 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 (1915), the Supreme Court reaffirmed its reasoning from an 1833 case, "and concluded that there is a 'confession of guilt implied in the acceptance of a pardon.'" In addition, the *Skinner* court mentioned that "[a] pardon 'involves forgiveness and not forgetfulness' and it does not 'wipe the slate clean.' A pardon does not close the judicial eye to the fact that once he had done an act which constituted the offense." *Skinner,* 632 A.2d at 84. Stated more clearly, "[w]hile a pardon removes all legal punishments and disabilities attached to a conviction, we hold that it cannot erase the *fact* that the offender was convicted...." *Id.* at 85; *see also Com. v. Vickey,* 381 Mass. 762, 412 N.E.2d 877, 881–82 (1980) ("Even if a pardon may remit all penal consequences of a criminal conviction, it cannot obliterate the acts which constituted the crime.") (quoting *Commissioner of Metropolitan Dist. Comm'n v. Director of Civil Serv.,* 348 Mass. 184, 203 N.E.2d 95 (1964)).

Returning to the focus in *Randall,* a pardon's impact on professional licensing, the *R.J.L.* court additionally discussed other Florida cases involving a pardoned individual seeking eligibility for a professional license, as we assume Blake is doing here. *R.J.L.,* 887 So.2d at 1277. In the case of *Branch v. State,* 120 Fla. 666, 163 So. 48 (1935), a Florida attorney sought reinstatement to the bar after a criminal conviction and subsequent pardon. Florida's supreme court held, in part:

> The disbarment of a practicing attorney is not part of the punishment inflicted for the commission of [a] crime, but is the withdrawing from him of an acquired right because of misconduct on his part.... The pardon wiping out the conviction of the criminal offense will not more reinstate the attorney who has been disbarred (not because of conviction, but because of a particular act) than would the refusal to grant the pardon preclude such person upon a proper showing from being reinstated in the practice of law.

*R.J.L.,* 887 So.2d at 1277 (quoting *Branch v. State,* 163 So. at 49); *see also State v. Snyder,* 136 Fla. 875, 187 So. 381 (1939) ("the case for disbarment grows out of the stigma attached to the fact of having been charged with and convicted of embezzlement.... A pardon does not reach and purge him of this stigma but goes only to civil rights.").

Thereafter, in *Page v. Watson,* 140 Fla. 536, 192 So. 205, 207 (1938), the Florida supreme court held that "[t]he effect of a pardon should not be construed or extended to strike down the statutes of Florida requiring moral qualifications to receive a license to practice medicine." Further, the *Page* court pronounced:

> The modern trend of authorities generally accepted by the courts is that a pardon restores one to the customary civil rights which ordinarily belong to a citizen of the State, which are generally conceded or recognized to be the right to hold office, to vote, to serve on a jury, to be a witness, but it does not restore offices forfeited, nor property or interests vested in others in consequence of conviction.

*R.J.L,* 887 So.2d at 1278.

Finally, in wrapping up the *R.J.L.* decision, it can come as no surprise that the

*R.J.L.* court ultimately held that an individual who receives a gubernatorial pardon is not entitled to a certificate of eligibility for the expunction of all criminal history records and decided that pardons in the State of Florida do not have the effect of eliminating guilt or the fact of conviction. *Id.* at 1281. In concluding, the *R.J.L.* court stated:

> The petitioner ... confuses a pardon with expunction. A pardon is the equivalent of forgiveness for a crime, it does not declare the pardoned individual innocent of the crime .... a pardon does not mean that the conviction is gone. If a pardon had the effect of allowing an individual to declare that he had not been adjudicated guilty of a crime, the end result would be that all pardoned individuals would be eligible for [expunction] of their criminal history records .... a pardon does not have the effect of erasing guilt so that a conviction is treated as though it had never occurred.

*Id.*

Applying the rationales of the aforementioned cases to Blake's case, we point out that unlike the defendants in *Branch* and *Snyder*, Blake did not *lose* the acquired right to practice law upon his conviction. Rather, from what the record infers, he now seeks to acquire that right for the first time. However, while mindful of our inability to speak for the Connecticut bar, we conjecture—using the *Page* court's reasoning—that Blake will nevertheless need to meet the moral qualifications of the Connecticut bar for admittance.

Lastly, our research unveils that some courts have relied on the specific language in a pardon to determine whether the Governor intended the pardon to be conditional or unconditional, and thus whether the expunction of records related to the pardoned crime is required. *See Com. v. J.C.K.*, 438 Pa.Super. 1, 651 A.2d 144, 147 (1994) (despite previously holding that "a pardon without [expunction] is not a pardon," a conditional pardon must leave the executive branch with the ability to exercise its right to nullify the pardon; therefore, there cannot be expunction of all criminal records related thereto) (quoting *Commonwealth v.C.S.*, 517 Pa. 89, 534 A.2d 1053, 1054 (1987)); *see also Roberto v. State*, 853 So.2d 582 (Fla. 5th DCA 2003), (court relied in part on the pardon's specific language that Roberto was not eligible for expunction of his criminal history records).

In the instant case, an examination of the language of Blake's pardon reveals no conditions *per se*, but at the same time includes no language to infer that the pardon is entirely unconditional. Thus, in our view, Blake's case leaves us with: (1) no specific language to rely on to ascertain the Governor's intent; (2) no statute to rely on pertaining to the expunction of arrest records following a gubernatorial pardon; and (3) an inability to ignore the fact that a majority of the case law from our sister states rejects the original principles drawn from *Ex parte Garland* and indicate that a pardon does not entitle the pardonee to expunction of all criminal records related to the conviction. As a result, we have little choice but to find that Blake's argument that his arrest records should be expunged fails. However, in light of our holding in *Bergman* and the State's concession as to this issue, we direct the trial court to expunge Blake's record of conviction. *See Bergman*, 558 N.E.2d at 1114.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying Blake's request to expunge his record of conviction, but properly denied his request to expunge the records relating to his ar-

rest. Accordingly, we now direct the trial court to expunge Blake's record of conviction.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, C.J., and FRIEDLANDER, J., concur.