LEWIS, J.
We have for review R.J.L. v. State, 818 So.2d 635 (Fla. 1st DCA 2002), which expressly and directly conflicts with the decision in Doe v. State, 595 So.2d 212 (Fla. 5th DCA 1992). We originally accepted jurisdiction to review the decision of Randall v. Florida Department of Law Enforcement, 791 So.2d 1238 (Fla. 1st DCA 2001), on the basis of express and direct conflict with Doe. Unfortunately, the petitioner there, Leonard David Randall, was killed in an automobile accident on or about November 1, 2002, prior to the date upon which oral argument was to occur. This Court subsequently removed Randall from the oral argument calendar and ordered Randall’s counsel to show cause as to why the case should not be dismissed as moot in light of Mr. Randall’s untimely death. The acceptance of jurisdiction in R.J.L., which concerns the identical issue as presented in Randall, had been stayed, pending resolution of Randall. Subsequently, Randall was dismissed as moot and this Court accepted jurisdiction in R.J.L. to ensure resolution of the issue presented.
Although the entirety of the opinion in R.J.L. consists of the following: “PER CURIAM. AFFIRMED. See Randall v. Florida Dep’t of Law Enforcement, 791 So.2d 1238 (Fla. 1st DCA 2001), rev. granted, No. 01-2135, 817 So.2d 849 (Fla. Apr. 12, 2002),” R.J.L., 818 So.2d at 635, jurisdiction is proper under article V, section 3(b)(3) of the Florida Constitution. R.J.L. explicitly relied upon Randall, which this Court recognized was in express and direct conflict with Doe. Therefore, as Randall was in conflict with Doe, likewise is R.J.L.
The record reflects that in 1953, R.J.L. was convicted of kidnapping without ransom. Subsequently, he was granted a full pardon by Governor Leroy Collins in 1959. The complete text of the pardon read:
[R.J.L.], who was convicted in the Court of Record, Escambia County, Florida, June term 1953, of the offense of Kidnapping Without Ransom, and sentenced to serve three years in the State Prison, should now, upon showing made, be granted a full and complete pardon; it being shown to the Board that since said conviction he has lived a law-abiding life, and that the Florida Parole Commission, after making a thorough investigation, recommended that he be granted a full and complete pardon.
*1270 Therefore, Be it Known that the said [R.J.L.] be, and he is hereby granted a fall and complete pardon of the above offense, thereby restoring to him full and complete civil rights.
In 2000, R.J.L. applied to the Florida Department of Law Enforcement (hereinafter “FDLE”) for a certificate of eligibility to have his criminal history record expunged. His application was denied by the FDLE. The FDLE explained that the reason R.J.L.’s application was denied was because “[t]he criminal history record reflects that the applicant has been adjudicated guilty of or adjudicated delinquent for committing one or more of the acts stemming from the arrest or alleged criminal activity to which the application pertains.” Having been denied a certificate of eligibility, R.J.L. filed, in the circuit court, a “Petition to Expunge and for Other Relief.” R.J.L. sought expungement of all criminal history record information in the custody of any criminal justice agency, a peremptory writ of mandamus commanding the FDLE to issue the certificate of eligibility, and a declaration of his rights and an injunction requiring the State and FDLE to issue the certificate of eligibility.
The circuit court issued an order, requiring the FDLE to show cause as to why R.J.L.’s relief should not be granted. See State v. R.J.L., No. 53-9550-CF (Fla.Cir. Ct. Nov. 3, 2000). The FDLE complied, relying primarily upon section 943.0585(2)(e) of the Florida Statutes (1999), which imposes a condition on the issuance of a certificate of eligibility, namely that the individual seeking the certificate not have been adjudicated guilty of the criminal activity he or she wishes to have expunged, as R.J.L. admittedly was. The trial court, ruling in favor of the State, determined that the issuance of the pardon did not remove the historical fact that R.J.L. was convicted of kidnapping without ransom, and therefore, the FDLE properly denied R.J.L. a certificate of eligibility for expungement of his criminal history record.
R.J.L. timely filed a notice of appeal to the First District Court of Appeal. Shortly after R.J.L. filed his notice of appeal, the First District released its opinion in Randall. See Randall, 791 So.2d at 1238. As detailed more fully below, the district court there held: “[W]hile a full pardon has the effect of removing all legal punishment for the offense and restoring one’s civil rights, it does not wipe out either guilt or the fact of conviction.” Id. at 1245. Relying upon its decision in Randall, the First District subsequently affirmed the decision of the trial court in the instant case. See R.J.L., 818 So.2d at 635.
Section 943.0585 of the Florida Statutes controls the expunction of nonjudicial criminal history records. See § 943.0585, Fla. Stat. (2000) (“Any court of competent jurisdiction may order a criminal justice agency to expunge the criminal history record of a minor or an adult who complies with the requirements of this section.”). The statute creates certain requirements that must be met prior to records expunction, most notably that the person seeking to have his or her records expunged must apply to the FDLE for a certificate of eligibility. See id. (“The court shall not order a criminal justice agency to expunge a criminal history record until the person seeking to expunge a criminal history record has applied for and received a certificate of eligibility for expunction pursuant to subsection (2).”). The FDLE will not grant a certificate of eligibility unless the person seeking expungement can attest to certain facts. Section 943.0585(2) provides:
Certificate of eligibility for expunction. — Prior to petitioning the court to expunge a criminal history record, a per *1271 son seeking to expunge a criminal history record shall apply to the department for a certificate of eligibility for expunction. The department shall ... establish procedures pertaining to the application for and issuance of certificates of eligibility for expunction. The department shall issue a certificate of eligibility for expunction to a person who is the subject of a criminal history record if that person:
[[Image here]]
(e) Has not been adjudicated guilty of, or adjudicated delinquent for committing, any of the acts stemming from the arrest or alleged criminal activity to which the petition to expunge pertains.
§ 943.0585(2), Fla. Stat. (2000).
We have previously held that section 943.0585 of the Florida Statutes, which mandates the issuance of a certificate of eligibility prior to the sealing of nonjudicial criminal history records, is constitutional and does not violate the separation of powers doctrine. See State v. D.H.W., 686 So.2d 1331, 1335 (Fla.1996). That conclusion was based, in part, on the recognition that “the courts’ power to order the sealing of nonjudicial criminal history records not in the custody of the courts derives only from a legislative grant by statute.” Id. Therefore, the Legislature can require that certain conditions, namely the issuance of a certificate of eligibility, must be met prior to the grant of a petition to seal a criminal history record. See id.
Based • upon the reasoning expressed in D.H.W., we likewise hold that the Legislature can constitutionally require that a certificate of eligibility be issued prior to the expungement of nonjudicial criminal history records. See State v. Plotka, 689 So.2d 1174, 1175 (Fla. 5th DCA 1997) (extending our holding in D.H.W. to cases involving petitions to expunge nonjudicial ‘criminal history records). In the instant case, R.J.L. was denied a certificate of eligibility because his record reflects that he has been adjudicated guilty of kidnapping without ransom, the criminal activity to which the petition to expunge pertains. We must now determine whether R.J.L.’s 1959 pardon acts to eliminate his adjudication of guilt, so as to entitle him to a certificate of eligibility for records expunction. We hold that it does not.
THE CONFLICTING DECISIONS OF THE FLORIDA DISTRICT COURTS OF APPEAL
In 1992, the Fifth District Court of Appeal concluded that a pardoned individual is eligible to have his criminal history records expunged. See Doe, 595 So.2d at 213. Initially, it is important to note that Doe was decided on February 28, 1992, prior to the July 1992 revision of the expunction statute, which added the requirement that the FDLE must issue a certificate of eligibility prior to a person being ablé to obtain an expunction of nonjudicial criminal history records. See § 943.0585(2), Fla. Stat. (2002). However, both the current statute and the statute construed in Doe contain nearly identical language limiting the eligibility of those who may obtain an expunction. Under the current statute, a person will only qualify for a certificate of eligibility if he “[h]as not been adjudicated guilty of, or adjudicated delinquent for committing, any of the acts stemming from the arrest or alleged criminal activity to which the petition to expunge pertains.” § 943.0585(2)(e), Fla. Stat. (2002). Similarly, the earlier statute read: “The courts may order the sealing or expunction of any other criminal history record, provided ... [t]he person who is the subject of the record has not been adjudicated guilty of any of the charges stemming from the arrest or alleged criminal activity to which *1272 the records expunction petition pertains .§ 948.058(2)(b), Fla. Stat. (1989). Because of the similarity of the language and the eligibility requirement found in both statutes, the 1992 statutory revision did not degrade the precedential value of the Doe holding.
The facts of Doe are virtually identical to the facts presented in both Randall and R.J.L. The individual in Doe had been convicted as an accessory to robbery. See Doe, 595 So.2d at 213. Following completion of the term of his sentence, he was granted a full and unconditional pardon. See id. He subsequently filed a petition to have his criminal records either sealed or expunged. See id. Although the trial court initially ordered the records expunged, the state filed a motion for reconsideration. See id. The state requested the trial court vacate the expunction order on the basis that the individual was not eligible for expunction under the statute because he had been adjudicated guilty of the offense. See id. The trial court agreed, and ruled the individual was not eligible for expunction despite his pardon, which did not remove the adjudication of guilt. See id. On appeal, the Fifth District Court of Appeal reversed. See id. There, the court explained that “[bjeeause a full and unconditional pardon legally blots out the finding of guilt, the pardon removes all the attendant legal consequences which flow from an adjudication of guilt. The pardonee is no longer legally considered ‘convicted’ or ‘adjudicated guilty’ of that crime.” Id.
The Doe court relied primarily upon three decisions from this Court to support its holding: In re Executive Communication of the 23rd of September, 1872, 14 Fla. 318 (1872), citing Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866); Singleton v. State, 38 Fla. 297, 21 So. 21 (1896); and Fields v. State, 85 So.2d 609 (Fla.1956). Citing those three cases as authority, the court wrote:
When the pardon is full, it remits the punishment and blots out of existence the guilt, so that in the eyes of the law the offender is as innocent as if he never committed the offense. A pardon not only blots out the crime committed, but removes all disabilities resulting from conviction and gives to an individual in whose favor it is granted a new character, and makes of him or her a new person. A full and unconditional pardon removes all that is left of the consequences of conviction.
Doe, 595 So.2d at 213 (citations omitted).
The Fifth District also recognized an inherent separation of powers problem with the trial court’s ruling. The appellate court rejected the state’s argument regarding the effect of a full pardon, explaining that if a pardoned individual is not entitled to expunction, then the Governor’s pardon power would be unconstitutionally limited. See id. at 214. Finally, the Doe court also rejected the trial court’s finding that the individual was not entitled to an expunction because it was necessary to have a record of pardoned convictions available should the individual seek a position of public trust. See id. The court noted that the expunction statute had specific provisions relating to access to expunged records for authorities responsible for licensing or employing individuals in offices or positions of public trust. See id.
Nearly ten years after Doe was decided, the First District issued its opinion in Randall. The Randall court analyzed the decision in Doe and compared it to the facts presented there, but was unable to distinguish the two cases. However, the court wrote: “[W]e conclude that the Doe court failed to consider the impact of certain relevant Florida Supreme Court decisions and, because of that, reached an *1273 incorrect result.” Randall, 791 So.2d at 1242.
Beginning its analysis of the issue by considering the line of Florida cases relied upon by the Fifth District in Doe, the First District noted that In re Executive Communication, 14 Fla. 318 (1872), which cited Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866), was “merely persuasive authority,” 791 So.2d at 1242, but had “been cited with apparent approval by the supreme court.” Id. at 1243. The court then recognized that both Singleton v. State, 38 Fla. 297, 21 So. 21 (1896), and Marsh v. Garwood, 65 So.2d 15 (Fla.1953), had cited In re Executive Communication with approval, but in dicta. Singleton and Marsh relied upon In re Executive Communication for the propositions that a pardon “removes all disabilities resulting from the conviction,” 791 So.2d at 1243 (quoting Singleton, 21 So. at 22), and that “a pardon ... reaches both the punishment prescribed and the guilt of the offender.” Id. (quoting Marsh, 65 So.2d at 19). Finally, the appellate court noted that both Singleton and Marsh were cited by this Court in Fields v. State, 85 So.2d 609 (Fla.1956), to establish that an unconditional pardon removes all the consequences of a conviction, and Singleton was cited with apparent approval in In re Advisory Opinion of Governor, Civil Rights, 306 So.2d 520 (Fla.1975). See 791 So.2d at 1243. Despite this authority, the First District focused instead upon the line of cases dealing with “the effect of a pardon in the context of occupational qualifications and licensing.” Id. Based upon the holdings of State v. Snyder, 136 Fla. 875, 187 So. 381 (1939); Page v. Watson, 140 Fla. 536, 192 So. 205 (1938); and Sandlin v. Criminal Justice Standards & Training Commission, 531 So.2d 1344 (Fla.1988), as well as decisions from other states and federal circuit courts, the First District held a pardon does not remove either guilt or the fact of conviction, and therefore Randall was not entitled to a certificate of eligibility. See id. at 1245.[1]
DECISIONS OF THE FEDERAL COURTS DETERMINING THE EFFECT OF A PRESIDENTIAL PARDON
In 1866, the United States Supreme Court decided the case of Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866). ’ In Garland, the Court wrote:
A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence.... [I]f granted after conviction, [a pardon] removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
Garland, 71 U.S. (4 Wall.) at 380-81, 18 L.Ed. 366. The United States Court of Appeals, District of Columbia Circuit, analyzed the facts and reasoning of Garland *1274 and found this often-cited paragraph to be dictum. See In re North, 62 F.3d 1434 (D.C.Cir.1994). The North court wrote:
Garland was a lawyer who had served as an official in the Confederacy. At the end of the war, the President pardoned him, but an Act of Congress excluded him from practicing before the Supreme Court. Nevertheless, the Court admitted him. It did not rest its judgment on the theory that the pardon blotted out Garland’s guilt. This expansive view of the effect of a pardon turned out to be dictum. The Court held that Garland’s exclusion was punishment, which the pardon barred.
[[Image here]]
Garland’s dictum was implicitly rejected in Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 (1915), which recognized that the acceptance of a pardon implies a confession of guilt.
North, 62 F.3d at 1436-37 (citations omitted).
In North, the pardoned individual was seeking attorneys’ fees under a federal statute which permitted the award of fees incurred during an independent counsel investigation, but only if no indictment had been brought against the individual. See id. at 1434. In that case, an indictment was brought, but the individual subsequently received a full, complete, and unconditional presidential pardon. See id. at 1435. The pardoned individual argued, under the theory expressed in Garland, that his pardon blotted out his indictment, and therefore he was entitled to attorneys’ fees. See id. at 1436. Refusing to follow the Garland dictum, the District of Columbia Circuit concluded that the pardoned individual was not entitled to attorneys’ fees. See id. at 1438. “The pardon does not blot out guilt or expunge the indictment. Though pardoned, George’s disability — the fact of his indictment — remains, preventing the court from awarding him attorneys’ fees.” Id.
North was not the first case to reject the Garland dictum; the Seventh Circuit has also done so. See Bjerkan v. United States, 529 F.2d 125 (7th Cir.1975). The question in Bjerkan was whether a presidential pardon, granted after the original judgment but during the time an appeal was pending, made the appeal moot. See id. at 126. In holding the appeal was moot, the court noted:
A pardon does not “blot out guilt” nor does it restore the offender to a state of innocence in the eye of the law as was suggested in Ex Parte Garland. We accept the view of the effect of a pardon propounded by Professor Williston in Does A Pardon Blot Out Guilt? 28 Harv. L.Rev. 647, 653 (1915):
The true line of distinction seems to . be this: The pardon removes all legal punishment for the offense. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.
Thus, the fact of conviction after a pardon cannot be taken into account in subsequent proceedings. However, the fact of the commission of the crime may be considered. Therefore, although the effects of the commission of the offense linger after a pardon, the effects of the conviction are all but wiped out.
Id. at 128 n. 2 (citations omitted).
One federal court has ruled on the direct question presented here. In United States *1275 v. Noonan, 906 F.2d 952 (3d Cir.1990), the court held that a presidential pardon did not entitle the pardoned individual to ex-punction of his court records.[2] As other courts had done, the Noonan court rejected the Garland dictum, reasoning that the United States Supreme Court had itself rejected it in Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 (1915). See Noonan, 906 F.2d at 958. The Third Circuit noted that the Burdick Court had concluded “that there is a ‘confession of guilt implied in the acceptance of a pardon.’ ” The Court explained that “ ‘[a pardon] carries an imputation of guilt; acceptance a confession of it.’ ” Id. (quoting Burdick, 236 U.S. at 91, 94, 35 S.Ct. 267) (citations omitted). Having examined several cases and numerous other legal authorities, the Noonan court held:
Thus, on the basis of long-held traditional views on the effect of a pardon, covering diverse periods and sources from Bracton and Blackstone to Professor Williston, from seventeenth century English cases to those in contemporary courts of Great Britain and the British Commonwealth, from 1915 teachings of the Supreme Court, and the 1975 analysis of the Court of Appeals of the Seventh Circuit, we conclude that the Presidential pardon of 1977 does not eliminate Noonan’s 1968 conviction and does not “create any factual fiction” that Noonan’s conviction had not occurred to justify expunetion of his criminal court record. Poena tolli potest, culpa perennis erit (The punishment can be removed, but the crime remains). BLACK’S LAW DICTIONARY 1040 (5th ed.1979).
Id. at 960.
Although the United States Supreme Court addressed the effect of a presidential pardon in Garland, clearly several federal courts have subsequently rejected Garland’s dictum in recent cases in which the courts were also determining the effect of a presidential pardon. The reasoning of these federal courts is important because the petitioner here relies upon the dictum found in Garland to support his argument. While R.J.L. also relies upon other decisions of this Court and the holding in Doe, it must be recognized that those decisions were, in great part, based upon the frequently rejected dictum in Garland. The federal courts’ treatment of dictum from the United States Supreme Court is persuasive as we analyze the multiple authorities. Therefore, R.J.L.’s contention that he is entitled to a certificate of eligibility based, in part, on Garland, must be considered with respect to the holdings of those courts that have both rejected and accepted the Garland dictum.
DECISIONS OF THE FLORIDA COURTS DETERMINING THE EFFECT OF A FULL PARDON
As highlighted by the Randall court, there are two lines of cases from this Court that speak to the issue before, us. The petitioner relies upon cases that have followed the United States Supreme Court decision of Garland. As noted above, in Garland, the Supreme Court held “when [a] pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence.” 71 U.S. (4 Wall.) at 380, 18 L.Ed. 366. While this Court has never directly addressed the issue of a pardon’s effect upon the expunetion statute, we have followed this language from Garland *1276 in cases requiring this Court to determine a pardon’s effect in other areas.
Only six years after the U.S. Supreme Court decided Garland, this Court issued an advisory opinion to then-Governor Harrison Reed. See In re Executive Communication, 14 Fla. 318 (1872). Governor Reed had asked this Court “whether the pardon of an individual, after conviction, restores the rights forfeited by the conviction.” Id. Quoting the language of Garland, this Court responded to the Governor in the following manner:
In reply to your communication as to the effect of a pardon under the Constitution and laws of the State of Florida, I would respectfully state that “a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender. When the pardon is full, it remits the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities and restores him to all his civil rights. It makes him as it were a new man, and gives him a new credit and capacity. There is only this limitation to its operation: it does not restore offices forfeited or property or interests vested in others in consequence of the conviction and judgment.” (Ex parte Garland, [71 U.S. (4 Wall.) at 380,18 L.Ed. 366]).
Id. at 319.
This Court continued to follow the language of Garland in Singleton v. State, 38 Fla. 297, 21 So. 21 (1896). In Singleton, the issue was a witness’s competency to testify. See Singleton, 21 So. at 21. The challenged witness had been convicted of larceny, and was considered to be an incompetent witness under a state statute in effect at that time. See id. However, the witness had been granted, by the Legislature, “an act to restore [his] civil rights.” Id. There, we held that the Legislature did not have the power to restore the witness’s civil rights; only the Governor may exercise the pardon power. See id. In examining the pardon power, we noted, in dictum:
It is settled law that the pardon of an offense not only blots out the crime committed, but removes all disabilities resulting from the conviction.... The doctrine, now well recognized, upon this subject, is that a pardon gives to the person in whose favor it is granted a new character, and makes of him a new man.
Id. at 22.
The next opportunity for this Court to analyze the pardon power came in Marsh v. Garwood, 65 So.2d 15 (Fla.1953). The issue in Marsh related to the Child Molester Act. See id. at 16. The individual challenging the Act had been confined in a state hospital, but was eligible for supervised release. See id. His case was being supervised by the Florida Parole Commission, which had not taken any action. See id. In analyzing the parole commission’s power, this Court distinguished parole and conditional release from a pardon. See id. at 19. In so doing, we wrote:
As is apparent, a parole or a conditional release differs from a pardon in that neither is an act of amnesty and neither terminates a sentence legally imposed, whereas a pardon, whether full or conditional, is an act of amnesty and does terminate the sentence. It reaches both the punishment prescribed and the guilt of the offender.
Id. (citations omitted). Although we did not cite to Garland in the Marsh decision, we did cite to In re Executive Communi *1277 cation and Singleton, indicating a continued reliance upon the reasoning of Garland. See id.
Finally, in Fields v. State, 85 So.2d 609 (Fla.1956), this Court decided that a pardoned conviction could not be counted as a prior felony conviction under the provisions of the habitual offender laws. See id. at 611.[3] Relying upon Marsh, this Court wrote:
But in spite of the fact that such statutes are not regarded as imposing any additional penalty for the former conviction, so as to collide with the rule against double jeopardy or ex post facto laws, no argument can escape the fact that to permit proof of a conviction under such circumstances, without regard to a pardon granted the offender therefor, violates the rule of penal law repeatedly expressed in opinions of this Court that a full and unconditional pardon “removes all that is left of consequences of conviction.”
Id. at 610.
Turning to the second line of relevant cases, the four decisions primarily relied upon by the respondent all deal with a related issue — the effect of a pardon upon eligibility for professional licenses. In both Branch v. State, 120 Fla. 666, 163 So. 48 (1935), and State v. Snyder, 136 Fla. 875, 187 So. 381 (1939), this Court held that an attorney, who had been disbarred as a result of a criminal conviction, was not automatically entitled to reinstatement upon receipt of a pardon. In Branch, we held:
The disbarment of a practicing attorney is not part of the punishment inflicted for the commission of crime, but it is the withdrawing from him of an acquired right because of misconduct on his part.... The pardon wiping out the conviction of the criminal offense will no more reinstate the attorney who has been disbarred (not because of conviction, but because of the commission of a particular act) than would the refusal to grant the pardon preclude such person upon a proper showing from being reinstated in the practice of law.
163 So. at 49. Distinguishing Garland, we determined that the disbarment in Garland constituted punishment for the conviction, which was forbidden after a presidential pardon, while in Florida disbarment was the loss of an acquired right, not automatically returned after the granting of a pardon. See id. at 50.
Similarly, in Snyder, we rejected the argument that a pardon automatically restored an individual to his status as an attorney. See Snyder, 187 So. at 381. Noting the decision in Branch, we held that “[t]he case for disbarment grows out of the stigma attached to the fact of having been charged with and convicted of embezzlement. ... A pardon does not reach and purge him of this stigma but goes only to civil rights.” Id. at 382. Without citing the Garland dictum, we further explained: “The pardon does not blot out the fact of having committed the crime for which disbarment is imposed and was no part of the punishment for it. It merely restores civil rights that were forfeited for having committed and been convicted of the crime.” Id.
*1278 In two other decisions, this Court adhered to the principle that a pardon has no effect on the right of an individual to hold a professional license. See Page v. Watson, 140 Fla. 536, 192 So. 205 (1938); Sandlin v. Criminal Justice Standards & Training Comm’n, 531 So.2d 1344 (Fla.1988). Page dealt with the right of a doctor to hold a medical license after a conviction and subsequent pardon. See 192 So. at 206. Holding “[t]he effect of a pardon should not be construed or extended to strike down the statutes of Florida requiring moral qualifications to receive a license to practice medicine,” id. at 210, we wrote:
The modern trend of authorities generally accepted by the courts is that a pardon restores one to the customary civil rights which ordinarily belong to a citizen of the State, which are generally conceded or recognized to be the right to hold office, to vote, to serve on a jury, to be a witness, but it does not restore offices forfeited, nor property or interests vested in others in consequence of conviction.
The effect of a full and absolute pardon as given in 46 C.J. pages 1192, 1193, par. 32, is viz.:
When a full and absolute pardon is granted, it exempts the individual upon which it is bestowed from the punishment which the law inflicts for the crime which he has committed. The crime is forgiven and remitted, and the individual is relieved from all of its legal consequences. The effect of a full pardon is to make the offender a new man. While a pardon has generally been regarded as blotting out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense, it does not so operate for all purposes and as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof; it does not wash out the moral stain; as has been tersely said; it involves forgiveness and not forgetfulness.
Id. at 207-08. This Court extended the holding of Page in Sandlin, holding that the underlying facts of a pardoned conviction may be given weight in determining an individual’s eligibility to be a law enforcement officer. See Sandlin, 531 So.2d at 1347. We noted that the Page Court had adopted the view that “a pardon removes punishment, but not moral guilt.” Id. at 1346. Sandlin is this Court’s most recent decision regarding the effect of a pardon. Clearly, we have determined that a pardon does not, under all circumstances, have the effect of “blotting out guilt,” as suggested in Garland, and does not always require treatment of the individual “as if he had never committed the crime.” Under our pardon jurisprudence, a pardon’s effect is dependent upon the facts of the issue presented.
DECISIONS OF OTHER STATE COURTS DETERMINING THE EFFECT OF A FULL PARDON
Numerous states have addressed the issue of the effect of a full pardon, with the rulings falling into two categories. In the first category, the courts have held that a full pardon has the effect of removing an adjudication of guilt so that the person is treated as if he never committed the crime. See, e.g., State ex rel. Gordon v. Zangerle, 136 Ohio St. 371, 26 N.E.2d 190, 194 (1940); Commonwealth v. Sutley, 474 Pa. 256, 378 A.2d 780, 789 (1977). The second category of decisions involves those cases in which the court has held that a pardon has the effect of removing punishment and penalties and restoring civil *1279 rights, but does not remove the adjudication of guilt. See, e.g., People v. Thon, 319 Ill.App.3d 855, 254 Ill.Dec. 177, 746 N.E.2d 1225 (2001); Storcella v. State Dep’t of Treasury, 296 N.J.Super. 238, 686 A.2d 789, 792 (1997); People ex rel. Prisament v. Brophy, 287 N.Y. 132, 38 N.E.2d 468 (1941); Prichard v. Battle, 178 Va. 455, 17 S.E.2d 393, 397 (1941). Only nine jurisdictions have directly addressed whether a pardon entitles an individual to records expunction.[4] A majority of those states agree with the Randall court and have held that a pardoned individual is not entitled to records expunction.[5] The primary rationale behind the holdings of these courts is that a pardon does not “blot out the existence of guilt.” Skinner, 632 A.2d at 87. Both Delaware and Illinois have expunction statutes similar to Florida’s. In Skinner and Glisson, the courts noted that the expunction statute specifically did not apply to a person who had been convicted of the crime he wished to have expunged. See id.; see also Glisson, 14 Ill.Dec. 473, 372 N.E.2d at 671. The courts then concluded the pardon did not have the effect of eliminating the fact of the conviction, and therefore the individual was not entitled to expunction of his records. See id.
Three courts have determined that a pardoned individual is entitled to records expunction.[6] The rationale behind the holdings of these courts is that a pardon eliminates guilt. The court in C.S. wrote: “[Tjhere is no way that the state can retain the record of a former criminal who is ‘as innocent as if he had never committed the offense.’ A pardon without expungement is not a pardon.” 534 A.2d at 1054 (quoting Sutley, 378 A.2d at 789) (citation omitted). In Bergman, the court analyzed the language of the pardon, which specifically noted that the reason the pardon was granted was to enhance the individual’s career opportunities and clear his name. See Bergman, 558 N.E.2d at 1114. The court determined that to carry out the executive mandate, the records expunction was necessary. See id.
The split in authority among the states demonstrates the lack of a general consen *1280 sus as to the issue of whether a pardon may make an individual eligible for records expunction. What these decisions do highlight is a reliance upon the- underlying theory that if a pardon has the effect, as the Doe court concluded, of eliminating the adjudication of guilt, the individual is eligible for expunction; however, if the pardon does not eliminate the adjudication of guilt, as the Randall court concluded, the individual is not entitled to expunction of his nonjudicial criminal history record.
APPLICATION OF AUTHORITY TO THE INSTANT ACTION
Initially, we note that the issue before us — the effect of a full pardon under the expunction statute — is a pure question of law, and therefore the proper standard of review is de novo. . See Armstrong v. Harris, 773 So.2d 7, 11 (Fla.2000). In Randall, the First District held that the retention of a criminal. history record does not constitute punishment, but rather, “merely accurately reflects the historical fact of [an] arrest and subsequent conviction.” Randall, 791 So.2d at 1245. Therefore, a pardon does not make an individual eligible for records expunction. We agree with the First District’s decision.
The decisions from, this Court regarding the effect of a pardon do little to aid us in deciding the issue of first impression presented here. This Court, in one line of decisions, has indicated a reliance upon the dictum in Garland, suggesting the proper conclusion is to determine that a pardon eliminates the adjudication of guilt, and therefore R.J.L. is entitled to his certificate of eligibility. See Fields, 85 So.2d at 610; Marsh, 65 So.2d at 16; Singleton, 21 So. at 22; In re Executive Communication, 14 Fla. at 318. However, in a separate line of decisions, we have also indicated that a pardon does not always act to completely erase the conviction, and therefore the petitioner would not qualify for a certificate of eligibility. See Sandlin, 531 So.2d at 1346; Snyder, 187 So. at 382; Page, 192 So. at 207-08; Branch, 163 So., at 50.
Turning instead to the decisions of the federal courts that have examined this issue, the most important facet of those decisions is the federal courts’ dismissal of the Garland dictum. It is clear those courts have rejected the Garland reasoning, and instead have determined that a presidential pardon does not entitle an individual to records expunction. See Noonan, 906 F.2d at 960. Similarly, the majority of state courts have concluded that a pardon does not erase guilt, and therefore under an expunction statute, like Florida’s, that, does not permit expunction when an individual has been convicted of the crime, a pardon does not make the individual eligible for expunction of nonjudicial criminal history records.
It is uncontested that a pardon has the effect of removing punishment and disabilities, and restoring civil rights. However, the denial of records expunction does not constitute a punishment. As in Branch, where we held that disbarment after a criminal conviction constitutes the loss of an acquired right, see Branch, 163 So. at 49, we likewise hold that records expunction is a right, which, pursuant to the expunction statute, is lost when a person is convicted of a criminal offense. However, eligibility for records expunction is not a civil right restored by the grant of a gubernatorial pardon. A pardon does not eliminate the adjudication of guflt, creating a fiction that the crime never occurred.
Pursuant to the current expunction statute, a person will only qualify for a certificate of eligibility if he “[h]as not been adjudicated guilty of, or adjudicated delinquent for committing, any of the acts stemming from the arrest or alleged crimi *1281 nal activity to which the petition to expunge pertains.” § 943.0585(2)(e), Fla. Stat. (2002). The petitioner argues that, because of his pardon, he satisfies this condition. This argument is misplaced, and confuses a pardon with expunction. A pardon is the equivalent of forgiveness for a crime, it does not declare the pardoned individual innocent of the crime. While a pardon removes the legal consequences of a crime, it does not remove the historical fact that the conviction occurred; a pardon does not mean that the conviction is gone. If a pardon had the effect of allowing an individual to declare that he had not been adjudicated guilty of a crime, the end result would be that all pardoned individuals would be eligible for expungement of their criminal history records. Today, we hold that a pardon does not have the effect of erasing guilt so that a conviction is treated as though it had never occurred. A pardoned individual can therefore not satisfy the requirements of section 943.0585(2)(e), and cannot qualify for a certificate of eligibility.
CONCLUSION
The First District correctly held that an individual who received a gubernatorial pardon is not entitled to a certificate of eligibility for records expunction pursuant to section 943.0585(2) of the Florida Statutes, as a pardon does not have the effect of eliminating guilt or the fact of conviction. A pardoned individual cannot satisfy the constitutional requirements of section 943.0585(2), because like other convicted individuals, a pardonee cannot maintain that he “[h]as not been adjudicated guilty of, or adjudicated delinquent for committing, any of the acts stemming from the arrest or alleged criminal activity to which the petition to expunge pertains.” Therefore, we approve the decisions of the First District in both R.J.L. and Randall, and disapprove the Fifth District’s holding in Doe.
It is so ordered.
PARIENTE, C.J., and WELLS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion.

. Recently, the Fifth District issued its decision in Roberto v. State, 853 So.2d 582 (Fla. 5th DCA 2003), where the appellant had contended that a pardon had the effect of wiping out his conviction, and therefore he was eligible for an expunction of his criminal history records. See id. The district court disagreed, and held that Roberto was not entitled to a certificate of eligibility for records expunction because the language of his pardon specifically stated that the pardon did not provide him with eligibility for expungement of criminal history records. On the basis of the éxplicit language of the statute, the Fifth District distinguished the issue presented from that of both Doe, also a Fifth District decision, and Randall.

. Within the federal system, there is no certificate of eligibility requirement prior to an individual receiving records expunetion.

. This issue is now controlled by statute in Florida. See § 775.084(l)(a)(4), Fla. Stat. (2002) (defining “habitual felony offender’’ and stating "[t]he defendant has not received a pardon for any felony ... that is necessary for the operation of this paragraph”). But see § 775.084(l)(b)(3), Fla. Stat. (2002) (defining "habitual violent felony offender” and stating defendant must not have "received a pardon on the ground of innocence for any crime that is necessary for the operation of this paragraph.”) (emphasis added).

. Two other states have statutes directly addressing the issue, which mandate that a pardoned individual is automatically eligible for records expunction. See Doe v. Manson, 183 Conn. 183, 438 A.2d 859, 860 (1981); Texas Dep’t of Pub. Safety v. Moran, 949 S.W.2d 523, 525 (Tex.App.1997). Additionally, the Commonwealth of Virginia permits an individual who has been granted an absolute pardon on the basis of an unjust conviction to file a petition requesting expungement of both judicial and nonjudicial records. See Va. Code Ann. § 19.2-392.2(A)(3) (2004). Further, Maryland permits expunction when an individual has been convicted of only one criminal act, and that act was not a crime of violence, and the governor has granted the individual a full and unconditional pardon. See Md.Code. Ann.Crim. Proc. § 10-105(a)(8) (Supp.2003).

. See State v. Skinner, 632 A.2d 82, 87 (Del. 1993); People v. Glisson, 69 Ill.2d 502, 14 Ill.Dec. 473, 372 N.E.2d 669, 671 (1978); Commonwealth v. Vickey, 381 Mass. 762, 412 N.E.2d 877, 883 (1980) (pardoned individual not entitled to sealing of criminal history record); State v. Bachman, 675 S.W.2d 41, 52 (Mo.Ct.App.1984) (relying upon Guastello v. Dep't of Liquor Control, 536 S.W.2d 21, 24 (Mo.1976), which held only the fact of conviction, not fact of guilt, is obliterated by a pardon); State v. Blanchard, 100 S.W.3d 226, 228 (Tenn.Crim.App.2002) (relying upon Randall); State v. Aguirre, 73 Wash.App. 682, 871 P.2d 616, 620 (1994).

.State v. Bergman, 558 N.E.2d 1111, 1114 (Ind.Ct.App.1990); State v. Cope, 111 Ohio App.3d 309, 676 N.E.2d 141, 143 (1996) (holding individual entitled to sealing of criminal history records due to pardon; court noted record expunction and record sealing are identical under this issue); Commonwealth v. C.S., 517 Pa. 89, 534 A.2d 1053, 1054 (1987).