# Whether a Presidential Pardon Expunges Judicial and Executive Branch Records of a Crime

A presidential pardon granted under Article II, Section 2 of the Constitution does not automatically expunge Judicial or Executive Branch records relating to the conviction or underlying offense.

August 11, 2006

MEMORANDUM OPINION FOR THE UNITED STATES PARDON ATTORNEY

You have asked us whether a presidential pardon granted under Article II, Section 2 of the Constitution has the effect of automatically expunging Judicial or Executive Branch records relating to the conviction or underlying offense. *See* Memorandum for Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Roger C. Adams, Pardon Attorney (June 1, 2005). We conclude that it does not.

## I.

The Pardon Clause authorizes the President "to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2. Previous opinions of this Office and of the Attorney General have extensively discussed the nature of pardons and their consequences for a wide variety of statutory disabilities. *See,* e.g., *Effects of a Presidential Pardon*, 19 Op. O.L.C. 160 (1995) (concluding that a pardon precludes the Attorney General from deporting criminal aliens and removes state firearms disabilities imposed as a result of a conviction of a federal crime); Memorandum for Andrew Oehmann, Executive Assistant to the Attorney General, from Norbert Schlei, Assistant Attorney General, Office of Legal Counsel, *Re: Effect of Pardon on Disability to Hold Federal Office* (Aug. 12, 1963); *Effect of Pardon on Statute Making Persons Convicted of Felonies Ineligible for Enlistment in the Army*, 39 Op. Att'y Gen. 132 (1938) (despite pardon, convicted felon could be barred from enlisting in the Army); *Army—Enlistment—Pardon*, 22 Op. Att'y Gen. 36 (1898) (pardon did not preclude application of statute prohibiting reenlistment of soldier whose previous service had not been "honest or faithful"). As these opinions confirm, a presidential pardon removes, either conditionally or unconditionally, the punitive legal consequences that would otherwise flow from conviction for the pardoned offense. A pardon, however, does not erase the conviction as a historical fact or justify the fiction that the pardoned individual did not engage in criminal conduct. A pardon, therefore, does not by its own force expunge judicial or administrative records of the conviction or underlying offense.

Chief Justice Marshall defined a presidential pardon as an act of grace that "exempts the individual, on whom it is bestowed, from the punishment the law

inflicts for a crime he has committed." *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833). "It is the private, though official, act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court." *Id*. at 160–61. In that sense, a presidential pardon is in contrast to a pardon by act of parliament in England, of which "a court must ex officio, take notice" because "it is considered as a public law; having the same effect on the case as if the general law punishing the offense had been repealed or annulled." *Id*. at 163.

The Executive Branch's long-held understanding of the scope of the pardon power reflects that view. In a previous opinion prepared for the Pardon Attorney, we concluded that although "a pardon removes or prevents the attachment of all consequences that are based on guilt for the offense," that "does not mean that a pardoned person cannot be held accountable for the conduct underlying the offense by a governmental entity seeking to determine suitability for a position of confidence or trust, adherence to a code of conduct, or eligibility for a benefit." *Effects of a Presidential Pardon*, 19 Op. O.L.C. at 165. This distinction between the consequences flowing from the *conviction* and those flowing from the *conduct* underlying the conviction is well established. In 1898, Attorney General Griggs opined that "whilst the President's pardon restores the criminal to his legal rights and fully relieves him of the disabilities legally attaching to his conviction, it does not destroy an existing fact, viz. that his service was not honest and faithful." *Army—Enlistment—Pardon*, 22 Op. Att'y Gen. at 39. *See also Naval Service— Desertion—Pardon*, 31 Op. Att'y Gen. 225, 227 (1918) ("An unconditional pardon abates whatever punishment flows from the commission of the pardoned offense, but can not in the nature of things eradicate the *factum* which is made a criterion of the fitness.").

In developing our views, we have endorsed the formulation that appears in Professor Samuel Williston's seminal article on pardons:

> The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualification. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.

Samuel Williston, *Does a Pardon Blot Out Guilt?*, 28 Harv. L. Rev. 647, 653 (1915). This passage is quoted in part in *Effects of a Presidential Pardon*, 19 Op. O.L.C. at 164.

In 1963, we applied this understanding of the pardon power when confronted with the question whether a presidential pardon would lift a prohibition on holding

"any office of honor, trust, or profit under the United States" imposed as a result of a conviction under 18 U.S.C. § 281 (1952). *See Effect of Pardon on Disability to Hold Federal Office*. We concluded that although a pardon for that offense would remove the statutory disability, it "would not obliterate all reference to the past conduct of the person pardoned." *Id.* at 1. Accordingly, the pardonee would henceforth be *eligible* to hold a federal office—which he would not have been without the pardon—but would not be entitled to be considered as if he had never engaged in the criminal conduct that led to the conviction. Put simply, a pardon "does not change the past and does not do away with the facts underlying the conviction." *Id.* at 7.

Our previous opinions thus strongly suggest that a pardon does not by its own force require the expungement of all records of a criminal conviction. The one federal case addressing the nature of a presidential pardon and the resulting relationship between pardon and judicial expungement reached the same conclusion. *United States v. Noonan*, 906 F.2d 952 (3d Cir. 1990), involved an expungement motion brought by a man convicted, and later pardoned, for failing to submit for military induction. The court of appeals held that the President's pardon "does not eliminate [the] conviction and does not 'create any factual fiction' that Noonan's conviction had not occurred to justify expunction of his criminal court record." *Id.* at 960. Instead, expungement of judicial records is an extraordinary remedy, which the courts are willing to grant only where "the harm to the individual caused by the continued existence of the records" outweighs "the governmental interest in maintenance of the records." *Id.* at 957. The court reasoned that a rule granting presidential pardons the necessary effect of expunging records would be difficult, if not impossible, to square with that individualized determination.[1]

*Noonan* also noted the well-accepted understanding, both in the American tradition and in the English tradition from which our Pardon Clause borrows, *see Wilson*, 32 U.S. (7 Pet.) at 159–60, that although pardons relieve the offender of whatever legal disabilities would otherwise attach to the conviction, they do not simultaneously "raise the inference that the person pardoned had not in fact committed the crime for which the pardon was granted." *Noonan*, 906 F.2d at 958–60 (quoting *R. v. Foster*, 1 Q.B. 115, 129 (1984)); *see also Hirschberg v. CFTC*, 414 F.3d 679, 682 (7th Cir. 2005) ("[T]he legal effect of a presidential

---

[1] As you have pointed out, *Noonan*'s value as precedent may have been called into question by the Third Circuit's subsequent decision in *United States v. Dunegan*, 251 F.3d 477 (3d Cir. 2001). There, the court held that "in the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record." *Id.* at 480. The Third Circuit pointed out that because *Noonan* skipped over this threshold inquiry, the opinion does not stand for the proposition that federal courts necessarily have jurisdiction to entertain motions for expungement. *Id.* at 479. Although *Dunegan* certainly suggests that the court in *Noonan* exceeded its authority in addressing the merits of the expungement issue, it does not cast doubt on the soundness of *Noonan*'s legal reasoning.

pardon is to preclude further punishment for the crime, but not to wipe out the fact of conviction."). Most, but not all, state courts have reached a similar conclusion with respect to state pardons. *See R.J.L. v. State*, 887 So. 2d. 1268, 1278–80 (Fla. 2004) (reporting that of the nine states whose courts have considered the issue, six have concluded that a pardoned individual is *not* entitled to records expungement). The Florida Supreme Court in *R.J.L.* adopted the majority position, holding that "a pardon does not have the effect of erasing guilt so that a conviction is treated as though it had never occurred." *Id.* at 1281.

A further obstacle to observing a necessary link between pardon and disregarding the historical fact of conviction is that there appears to be no single understanding of what "expungement" means. Expungement has been defined in many ways, some overlapping and some inconsistent. An expungement order may require the physical destruction of records, *United States v. Johnson*, 941 F.2d 1102, 1111 (10th Cir. 1991), or simply be "similar to an order not to report a conviction," *United States v. Sweeney*, 914 F.2d 1260, 1262 (9th Cir. 1990). The Supreme Court has recognized that state expungement statutes vary:

> Some speak of expunging the conviction, others of "sealing" the file or of causing the dismissal of the charge. The statutes also differ in their actual effect. Some are absolute; others are limited. Only a minority address questions such as whether the expunged conviction may be considered in sentencing for a subsequent offense or in setting bail on a later charge, or whether the expunged conviction may be used for impeachment purposes, or whether the convict may deny the fact of his conviction.

*Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 121–22 (1983). In short, the Court concluded, the variable uses of expungement by the States "provide nothing less than a national patchwork." *Id.*[2]

---

[2] Very few federal statutes touch upon expungement. Under the Federal Sentencing Guidelines, "expunged convictions" are not counted toward a defendant's criminal history "but may be considered under § 4A1.3 (Adequacy of Criminal History Category)." U.S. Sentencing Guidelines Manual § 4A1.2(j) (2005); *see id.* § 4A1.3(a)(1). Under section 4A1.3, "if reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." *Id.* To create uniformity in the treatment of "expunged convictions," an application note to the Sentencing Guidelines provides:

> Convictions Set Aside or Defendant Pardoned. A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, i.e., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted.

*Id.* § 4A1.2, cmt. n.10 (2005).

The primary support for concluding that a pardon requires expungement of all official references to the pardoned crime appears in dicta in the Supreme Court's decision in *Ex Parte Garland*, 71 U.S. (4 Wall.) 333 (1866). Garland was an Arkansas attorney who served as a member of the Confederate Congress during the Civil War. He received a full pardon from President Lincoln for his activities, but was still barred by federal statute from practicing before the Supreme Court because he could not take the requisite oath that he had never given aid to enemies of the United States. After holding that the statute requiring the oath was an unconstitutional bill of attainder, the Supreme Court addressed the nature of a pardon:

> A pardon reaches both the punishment prescribed for the offence and the guilt of the offender: and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence.

*Id.* at 380–81. As this Office has previously explained, however, Garland's broad statement has "not been applied literally by the courts, including the Supreme Court." *Effect of Pardon on Disability to Hold Federal Office* at 5. Indeed, as the Third Circuit observed in Noonan, it was not long before the Supreme Court "made clear that it was not accepting the Garland dictum that a pardon 'blots out of existence the guilt.'" 906 F.2d at 958. The Court's decision in *Carlesi v. New York*, 233 U.S. 51 (1914), considered the effect of a pardon on a state's habitual-offender law. The Court observed that application of the law would be unconstitutional to the extent it took "into consideration a prior conviction of an offense committed by the same offender . . . despite a pardon," if it were "in any just sense a punishment for such prior crime." *Id.* at 57. In contrast, however, the Court made clear that the prior offense could be used "as a circumstance of aggravation"—and could thus lead to an enhanced penalty for a new crime—"even although for such past offenses there had been a pardon granted." *Id.* at 59. This distinction makes sense only if a pardon does not preclude consideration of the underlying offense in making subsequent decisions about the pardonee, and is incompatible with the conclusion that a pardon blots out all record of the crime.

In subsequent cases, the Supreme Court backed even further away from *Garland*'s expansive dictum. Thus, in *Burdick v. United States*, 236 U.S. 79 (1915), which addressed whether a would-be pardonee could refuse a pardon, the Court wrote that a pardon "carries an imputation of guilt; acceptance a confession of it." *Id.* at 94. This understanding seems inconsistent with *Garland*'s suggestion that a pardoned individual is made as innocent as one who never committed the crime in the first place. Similarly, Justice Holmes's observation for the Court in *Biddle v. Perovich*, 274 U.S. 480, 486 (1927), that a pardon is "the determination of the ultimate authority that the public welfare will be better served by inflicting less

than what the judgment fixed," suggests that although a pardon lessens the legal effects of a criminal judgment, it does not erase that judgment as historical fact.

## II.

It follows from this analysis that pardon and expungement are distinct actions. A pardon may in some cases affect the question of expungement, but such effect will depend, among other things, on which branch of the government possesses the records. Because "the power to pardon is an executive prerogative of mercy, not of judicial record-keeping," a pardon has no immediate effect on the Judiciary or judicial records. *Noonan*, 906 F.2d at 955. For similar reasons, courts rarely order expungement of Executive Branch records: "The President, not the district court, runs the executive branch—and it is he who decides how that branch will function." *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 699 (5th Cir. 1997) ("There is no constitutional basis for a 'right to expungement'" of Executive Branch records.). The Seventh Circuit, in *United States v. Janik*, 10 F.3d 470 (7th Cir. 1993), held that a petition for expungement of Executive Branch records must be made directly to the Executive Branch because "federal courts are without jurisdiction to order an Executive Branch agency to expunge what are admittedly accurate records of a person's indictment and conviction." *Id*. at 472. The majority of circuits have found that federal courts do have the power to enter an expungement order against the Executive Branch, but even they warn "expungement should rarely, if ever, be employed by the courts against executive agencies." *Sealed Appellant*, 130 F.3d at 698.

On the other hand, an order to seal or destroy Executive Branch records may come from the President rather than the courts. The President may craft a pardon to fit particular circumstances.[3] In rare cases, Presidents have chosen to grant pardons that state the reason for granting the pardon, such as the President's conclusion that the evidence upon which conviction rested is questionable or that the pardonee is innocent of the offense.[4] Pardons that address the innocence of the

---

[3] For example, "the President may grant a pardon on the condition that the offender pay any court-ordered restitution imposed before the pardon was issued." *Effects of a Presidential Pardon*, 19 Op. O.L.C. at 168 n.7. On the other hand, the President can issue a pardon commonly labeled "A Full and Unconditional Pardon," which does not impose any requirements. It is the President's prerogative to pardon prior to conviction, after conviction, or only after the sentence has been served. *See id*. at 164 ("Throughout the Nation's history, Presidents have asserted the power to issue pardons prior to conviction, and the consistent view of the Attorneys General has been that such pardons have as full an effect as pardons issued after conviction.").

[4] President Lyndon Johnson prefaced a pardon by stating, "Whereas it has been made to appear to me that the said Carl Hirdler Buck was unjustly convicted of the aforesaid offense and is innocent of said charge; that he did not commit any of the acts charged; that his acts, deeds or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia; and that he did not by misconduct or neglect cause or bring about his own prosecution," a pardon "is in order." Pardon of Carl Hirdler Buck (Sept. 10, 1965). President Franklin Roosevelt prefaced a pardon with less certain language, stating that a pardon was appropriate because

pardonee have not to date also commanded expungement of Executive Branch records of the offense. If a President chose simultaneously to issue a pardon and order the Executive Branch to expunge any such records, we believe that order would have the effect intended, subject to any statutory constraints on executive record-keeping.[5] Even in that case, however, the pardon would not automatically expunge the records; it would be the President's separate expungement order that would require administrative agencies to take action.

Understood this way, a presidential pardon does not operate to erase automatically the records relating to the pardoned offense. The relevant judicial and executive records preserve an important set of historical facts concerning the individual's criminal history. Those records may describe the circumstances of the offense and the charges brought against the accused, as well as a court's ultimate disposition of the government's case. None of those facts or circumstances is automatically erased or altered by a subsequent pardon. The pardon instead eliminates any punitive consequences that would otherwise flow from the individual's guilt. But where the facts and circumstances of the underlying conduct continue to be relevant for a variety of decisions that may ultimately be made about the pardonee, the records memorializing and verifying those facts continue to exist and can help ensure that such decisions are made fairly and accurately.

In reaching this conclusion, we do not suggest that a pardon could never be relevant in determining whether to expunge Judicial or Executive Branch records. We conclude only that a pardon does not expunge such records automatically and therefore that the relevant record-keeper is not obliged by virtue of a pardon to purge its files of all references to the pardoned offense.

MICHELLE E. BOARDMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

"it has been made to appear to me that there is grave doubt of the guilt of the said William F. Leishear of the crime of which he was convicted." Pardon of William F. Leishear (Oct. 12, 1942).

[5] "The Attorney General shall . . . acquire, collect, classify, and preserve identification, criminal identification, crime, and other records," and shall "exchange such records and information with, and for the official use of, authorized officials of the Federal Government, including the United States Sentencing Commission, the States, cities, and penal and other institutions." 28 U.S.C. § 534(a)(1), (a)(4) (2000 & Supp. V 2005). At least one statute simultaneously provides for the expungement of criminal records under certain circumstances and the preservation of non-public records by the Department of Justice. The non-public record is kept in part in order to foreclose a second expungement. *See* 18 U.S.C. § 3607(b) (2000) ("A nonpublic record of . . . a conviction that is the subject of an expungement order under [this section], shall be retained by the Department of Justice solely for the purpose of use by the courts in determining in any subsequent proceeding whether a person qualifies for the disposition provided in [one section] or the expungement provided in" another.).